No. 24-10462

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

ROBERT HOPKINS, III,

*Plaintiff-Appellant*,

v.

DEPARTMENT OF DEFENSE,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
No. 3:22-cv-00706 (Ada E. Brown, J.)

_____

**RECORD EXCERPTS**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

**Document**                                                                          **Tab**

Civil Docket (ROA.1-8)...................................................................... 1

Notice of Appeal (ROA.1036)........................................................... 2

Final Judgment (ROA.1023).............................................................. 3

Order (ROA.1034-1035).................................................................... 4

Memorandum Opinion and Order (ROA.1006-1022) ...................................... 5

Complaint (excerpt) (ROA.9-25)........................................................ 6

Plaintiff's Unopposed Motion for Status Conference (ROA.368-378)............ 7

Plaintiff's Motion for Leave to File an Initial Motion for Partial Summary
    Judgment and for Expedited Consideration (ROA.452-457)................. 8

Plaintiff's Corrected Partially Unopposed Motion to Stay Briefing of
    Defendant's Motion to Dismiss and for Summary Judgment
    (ROA.915-917)........................................................................... 9

Declaration of Robert Hopkins, III (ROA.978-980)........................................ 10

Certificate of Service ........................................................................ 11

TAB 1

APPEAL,CLOSED,JURY,STAYED,TOLIVER

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:22-cv-00706-E

Hopkins v. Department of Defense
Assigned to: Judge Ada Brown
 Case in other court:  USCA5, 24-10462
Cause: 05:702 Administrative Procedure Act

Date Filed: 03/27/2022
Date Terminated: 03/25/2024
Jury Demand: Plaintiff
Nature of Suit: 899 Other Statutes:
Administrative Procedure Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Robert Hopkins, III**                     represented by    **Kelly Brian McClanahan**
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
Fax: 240-681-2189
Email: kel@nationalsecuritylaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Department of Defense**                     represented by    **Rachael Lynn Westmoreland**
United States Department of Justice
1100 L Street NW
Washington, DC 20005
202-514-1280
Fax: 202-616-8460
Email: rachael.westmoreland@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John T. Lewis**
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Ste 12212
Washington, DC 20530
202-353-0533
Email: john.t.lewis.iii@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lisa Newman-DOJ**
Department of Justice, Civil Division
1100 L Street NW, Room 12016
Washington, DC 20005
202-514-5578
Email: lisa.n.newman@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2022 | 1 (p.9) | COMPLAINT WITH JURY DEMAND against Department of Defense filed by Robert Hopkins, III. (Filing fee $402; Receipt number 0539-12700172) Clerk to issue summons(es) for federal defendant(s). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.9) Cover Sheet) (McClanahan, Kelly) (Entered: 03/27/2022) |
| 03/27/2022 | 2 (p.48) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Robert Hopkins, III. (Clerk QC note: No affiliate entered in ECF). (McClanahan, Kelly) (Entered: 03/27/2022) |
| 03/27/2022 | 3 (p.50) | MOTION for Leave to Be Represented by a Non-Resident Attorney without Local Counsel in Violation of Local Rule 83.10 filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 03/27/2022) |
| 03/27/2022 | 4 (p.53) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Toliver). Clerk to provide copy to plaintiff if not received electronically. (ykp) (Entered: 03/28/2022) |
| 03/28/2022 | 5 (p.55) | Summons issued as to Department of Defense, U.S. Attorney, and U.S. Attorney General. (ykp) (Entered: 03/28/2022) |
| 03/28/2022 | 6 (p.61) | ORDER granting 3 (p.50) Motion for Leave to Be Represented by a Non-Resident Attorney without Local Counsel in Violation of Local Rule 83.10. (Ordered by Senior Judge Sam R Cummings on 3/28/2022) (mla) (Entered: 03/28/2022) |

| | | |
|---|---|---|
| 04/05/2022 | 7 (p.62) | SUMMONS Returned Executed as to Department of Defense; served on 3/31/2022; US Attorney; served on 4/1/2022; Attorney General; served on 4/2/2022. (McClanahan, Kelly) Modified text on 4/6/2022 (jmg). (Entered: 04/05/2022) |
| 05/23/2022 | 8 (p.66) | NOTICE of Attorney Appearance by Rachael Lynn Westmoreland on behalf of Department of Defense. (Filer confirms contact info in ECF is current.) (Westmoreland, Rachael) (Entered: 05/23/2022) |
| 05/23/2022 | 9 (p.68) | Unopposed Motion for Extension of Time to File Answer filed by Department of Defense with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (Westmoreland, Rachael) (Entered: 05/23/2022) |
| 05/31/2022 | 10 (p.72) | ORDER granting 9 (p.68) Motion for Extension of Time to File Answer. Defendant's deadline in which to file an answer or otherwise respond to Plaintif's Complaint is hereby EXTENDED to 6/7/2022. (Ordered by Senior Judge Sam R Cummings on 5/31/2022) (ygl) (Entered: 05/31/2022) |
| 06/07/2022 | 11 (p.73) | ANSWER to 1 (p.9) Complaint filed by Department of Defense. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.9) Exhibit(s) A- DoDI 5230.29, # 2 (p.48) Exhibit(s) B- DoDI 5230.09, # 3 (p.50) Exhibit(s) C- AFI 35-101, # 4 (p.53) Exhibit(s) D- AFMAN 35-101) (Westmoreland, Rachael) (Entered: 06/07/2022) |
| 06/13/2022 | 12 (p.365) | SCHEDULING ORDER: Amended Pleadings due by 10/17/2022. Deadline for mediation is on or before 6/15/2023. Discovery due by 9/11/2023. Joinder of Parties due by 10/17/2022. Motions for Summary Judgment due by 6/15/2023. Pretrial Order due by 10/2/2023. Pretrial Materials due by 10/2/2023. Jury Trial set for 10/2/2023 before Senior Judge Sam R Cummings. (Ordered by Senior Judge Sam R Cummings on 6/13/2022) (ndt) (Entered: 06/13/2022) |
| 05/09/2023 | 13 (p.368) | MOTION for Status Conference (Unopposed) re 12 (p.365) Scheduling Order, filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 05/09/2023) |
| 05/12/2023 | 14 (p.381) | RESPONSE filed by Department of Defense re: 13 (p.368) MOTION for Status Conference (Unopposed) re 12 (p.365) Scheduling Order, (Westmoreland, Rachael) (Entered: 05/12/2023) |
| 05/18/2023 | 15 (p.387) | MOTION to Stay re 12 (p.365) Scheduling Order, filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 05/18/2023) |

| | | |
|---|---|---|
| 05/24/2023 | 16 (p.392) | NOTICE of Attorney Appearance by John T. Lewis on behalf of Department of Defense. (Filer confirms contact info in ECF is current.) (Lewis, John) (Entered: 05/24/2023) |
| 05/24/2023 | 17 (p.394) | Cross MOTION to Amend/Correct 12 (p.365) Scheduling Order, 15 (p.387) MOTION to Stay re 12 (p.365) Scheduling Order, *and Partial Opposition to Plaintiff's Motion to Stay*, Unopposed MOTION to Expedite *Decision on Scheduling Motions by June 5, 2023* () filed by Department of Defense with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (Lewis, John) (Entered: 05/24/2023) |
| 05/31/2023 | 18 (p.406) | NOTICE of *Delayed Filing* re: 17 (p.394) Cross MOTION to Amend/Correct 12 (p.365) Scheduling Order, 15 (p.387) MOTION to Stay re 12 (p.365) Scheduling Order, *and Partial Opposition to Plaintiff's Motion to Stay*Unopposed MOTION to Expedite *Decision on Scheduling Motions by June 5, 2023* filed by Robert Hopkins, III (McClanahan, Kelly) (Entered: 05/31/2023) |
| 06/01/2023 | 19 (p.408) | REPLY filed by Robert Hopkins, III re: 15 (p.387) MOTION to Stay re 12 (p.365) Scheduling Order, , 17 (p.394) Cross MOTION to Amend/Correct 12 (p.365) Scheduling Order, 15 (p.387) MOTION to Stay re 12 (p.365) Scheduling Order, *and Partial Opposition to Plaintiff's Motion to Stay*Unopposed MOTION to Expedite *Decision on Scheduling Motions by June 5, 2023* (Attachments: # 1 (p.9) Exhibit(s) A - McGehee brief (excerpt), # 2 (p.48) Exhibit(s) B - Stillman transcript (excerpt), # 3 (p.50) Exhibit(s) C - Stillman discovery, # 4 (p.53) Exhibit(s) D - Stillman notice of filing, # 5 (p.55) Proposed Order) (McClanahan, Kelly) (Entered: 06/01/2023) |
| 06/02/2023 | 20 (p.433) | SPECIAL ORDER 3-348 REASSIGNING CASE. Case reassigned to Senior Judge Sidney A Fitzwater for all further proceedings. Senior Judge Sam R Cummings no longer assigned to case. (Ordered by Chief District Judge David C Godbey on 6/2/2023) (chmb) (Main Document 20 replaced on 6/5/2023) (chmb). (Entered: 06/05/2023) |
| 06/06/2023 | 21 | Court Request for Recusal: Senior Judge Sidney A Fitzwater recused. Pursuant to instruction in Special Order 3-249, the Clerk has reassigned the case to Judge Ada Brown for all further proceedings. Future filings should indicate the case number as: 3:22-cv-00706-E. (frw) (Entered: 06/06/2023) |
| 06/07/2023 | 22 (p.434) | Joint MOTION to Expedite *Decision Concerning Scheduling Motions* filed by Department of Defense with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order, # 2 (p.48) Proposed Order, # 3 (p.50) Proposed Order, # 4 (p.53) Proposed Order) (Lewis, John) (Entered: 06/07/2023) |
| 06/08/2023 | 23 (p.442) | Amended Joint Renewed MOTION to Expedite *Decision Concerning Scheduling Motions [Amended]* filed by Department of Defense with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order, # 2 (p.48) Proposed Order, # 3 (p.50) |

| | | |
|---|---|---|
| | | Proposed Order, # 4 (p.53) Proposed Order) (Lewis, John) Modified text on 6/9/2023 (acm). (Entered: 06/08/2023) |
| 06/13/2023 | 24 (p.450) | ORDER: Defendant shall file its motion for summary judgment with an accompanying ex parte, in camera affidavit no later than 8/11/2023. All other deadlines in 12 (p.365) Scheduling Order are hereby STAYED pending the Court's adjudication of Defendant's forthcoming motion for summary judgment. 13 (p.368) Motion for Status Conference is DENIED; 15 (p.387) Motion to Stay is MOOT; 17 (p.394) Motion to Amend/Correct is GRANTED; 22 (p.434) Motion to Expedite is MOOT; and 23 (p.442) Motion to Expedite is GRANTED. (Ordered by Judge Ada Brown on 6/13/2023) (sxf) (Entered: 06/13/2023) |
| 06/24/2023 | 25 (p.452) | MOTION to Expedite (), MOTION for Leave to File Initial Motion for Partial Summary Judgment filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 06/24/2023) |
| 06/27/2023 | 26 (p.460) | RESPONSE filed by Department of Defense re: 25 (p.452) MOTION to Expedite MOTION for Leave to File Initial Motion for Partial Summary Judgment (Lewis, John) (Entered: 06/27/2023) |
| 06/29/2023 | 27 (p.467) | REPLY filed by Robert Hopkins, III re: 25 (p.452) MOTION to Expedite MOTION for Leave to File Initial Motion for Partial Summary Judgment (McClanahan, Kelly) (Entered: 06/29/2023) |
| 06/29/2023 | 28 | ELECTRONIC ORDER. On June 13, 2023, the Court issued an Order, (ECF No. 24), that, *inter alia*: (1) granted Defendant Department of Defense's ("Defendant") Motion to Amend/Correct, (ECF No. 17); (2) ordered Defendant to file its motion for summary judgment by August 11, 2023; and (3) stayed the Court's scheduling order, (ECF No. 12), pending the Court's adjudication of Defendant's motion for summary judgment. On June 24, 2023, Plaintiff Robert Hopkins, III ("Plaintiff") filed a Motion for Leave to File an Initial Motion for Partial Summary Judgment and for Expedited Consideration. (ECF No. 25). Having already concluded that the Court will consider Defendant's motion for summary judgment before determining how to proceed with this case, the Court hereby **DENIES** Plaintiff's Motion for Leave to File an Initial Motion for Partial Summary Judgment and for Expedited Consideration, (ECF No. 25). (Ordered by Judge Ada Brown on 6/29/2023) (chmb) (Entered: 06/29/2023) |
| 08/07/2023 | 29 (p.471) | Emergency MOTION to Extend Time to File Motion for Summary Judgment filed by Department of Defense with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Notice of Lodging, # 2 (p.48) Proposed Order) (Lewis, John) (Entered: 08/07/2023) |
| 08/07/2023 | 30 (p.481) | RESPONSE AND OBJECTION filed by Robert Hopkins, III re: 29 (p.471) Emergency MOTION to Extend Time to File Motion for Summary Judgment (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 08/07/2023) |

| | | |
|---|---|---|
| 08/10/2023 | 31 (p.486) | ORDER granting Defendant United States Department of Defense's ("Defendant") 29 (p.471) Emergency Motion for Extension of Time. Defendant shall file its motion for summary judgment no later than Wednesday 10/4/2023, at 5:00 pm, central standard time. (Ordered by Judge Ada Brown on 8/10/2023) (twd) (Entered: 08/10/2023) |
| 10/04/2023 | 32 (p.488) | MOTION to Dismiss for Lack of Jurisdiction , MOTION for Summary Judgment () filed by Department of Defense (Attachments: # 1 (p.9) Brief in Support, # 2 (p.48) Proposed Order, # 3 (p.50) Unclassified Appendix, # 4 (p.53) Notice of Lodging Classified Appendix) (Lewis, John) (Entered: 10/04/2023) |
| 10/23/2023 | 33 (p.905) | MOTION for Extension of Time to File Response/Reply to 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 10/23/2023) |
| 10/24/2023 | 34 | ELECTRONIC ORDER granting 33 (p.905) Motion to Extend Time to File Response/Reply. UPON CONSIDERATION OF Plaintiff's Unopposed Motion for Enlargement of Time Within Which to File Opposition to Defendant's Motion to Dismiss and for Partial Summary Judgment, and the entire record herein, it is ORDERED that Plaintiff's Motion is GRANTED; and FURTHER ORDERED that Plaintiff shall file his Opposition no later than January 5, 2024. (Ordered by Judge Ada Brown on 10/24/2023) (chmb) (Entered: 10/24/2023) |
| 01/03/2024 | 35 (p.909) | Unopposed MOTION to Stay re 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 01/03/2024) |
| 01/03/2024 | 36 (p.913) | NOTICE of Attorney Appearance by Lisa Newman-DOJ on behalf of Department of Defense. (Filer confirms contact info in ECF is current.) (Newman-DOJ, Lisa) (Entered: 01/03/2024) |
| 01/03/2024 | 37 (p.915) | MOTION to Stay re 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment *(Partially Unopposed)* filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 01/03/2024) |
| 01/05/2024 | 38 (p.920) | MOTION to Unseal Document 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment filed by Department of Defense filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 01/05/2024) |
| 01/24/2024 | 39 (p.931) | RESPONSE filed by Department of Defense re: 37 (p.915) MOTION to Stay re 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment *(Partially* |

| | | |
|---|---|---|
| | | *Unopposed)*, 38 (p.920) MOTION to Unseal Document 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment filed by Department of Defense (Newman-DOJ, Lisa) (Entered: 01/24/2024) |
| 02/07/2024 | 40 (p.943) | REPLY filed by Robert Hopkins, III re: 37 (p.915) MOTION to Stay re 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment *(Partially Unopposed)* (Attachments: # 1 (p.9) Exhibit(s) 1 - Newman-McClanahan email) (McClanahan, Kelly) (Entered: 02/07/2024) |
| 02/07/2024 | 41 (p.947) | REPLY filed by Robert Hopkins, III re: 38 (p.920) MOTION to Unseal Document 32 (p.488) MOTION to Dismiss for Lack of Jurisdiction MOTION for Summary Judgment filed by Department of Defense (McClanahan, Kelly) (Entered: 02/07/2024) |
| 02/12/2024 | 42 (p.955) | MOTION to Authorize His Counsel to Access His Intended Evidence filed by Robert Hopkins, III (Attachments: # 1 (p.9) Memorandum of Points & Authorities, # 2 (p.48) Exhibit(s) A - Hopkins declaration, # 3 (p.50) Exhibit(s) B - Lawless Order, # 4 (p.53) Proposed Order) (McClanahan, Kelly) (Entered: 02/12/2024) |
| 03/04/2024 | 43 (p.987) | RESPONSE filed by Department of Defense re: 42 (p.955) MOTION to Authorize His Counsel to Access His Intended Evidence (Lewis, John) (Entered: 03/04/2024) |
| 03/12/2024 | 44 (p.994) | MOTION for Extension of Time to File Response/Reply to 42 (p.955) MOTION to Authorize His Counsel to Access His Intended Evidence filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 03/12/2024) |
| 03/13/2024 | 45 | ELECTRONIC ORDER granting 44 (p.994) Motion to Extend Time to File Response/Reply. UPON CONSIDERATION OF Plaintiff's Consent Motion for Enlargement of Time Within Which to File Reply to 42 (p.955) Motion to Authorize His Counsel to Access His Intended Evidence, and the entire record herein, it is ORDERED Plaintiff's Motion is GRANTED. Plaintiff shall file his Reply no later than March 25, 2024. (Ordered by Judge Ada Brown on 3/13/2024) (chmb) (Entered: 03/13/2024) |
| 03/25/2024 | 46 (p.997) | REPLY filed by Robert Hopkins, III re: 42 (p.955) MOTION to Authorize His Counsel to Access His Intended Evidence (McClanahan, Kelly) (Entered: 03/25/2024) |
| 03/25/2024 | 47 (p.1006) | MEMORANDUM OPINION AND ORDER. The Court GRANTS the DOD's 32 (p.488) motion to dismiss or for summary judgment, and all of Hopkins' claims are hereby dismissed with prejudice. Further, Hopkins' 35 (p.909) unopposed motion to stay is DENIED AS MOOT; Hopkins' 37 (p.915) partially unopposed motion to stay, is DENIED, and thus, Hopkins' 38 (p.920) motion to unseal, and Hopkins' 42 (p.955) motion to authorize, are DENIED AS MOOT. (Ordered by Judge |

| | | |
|---|---|---|
| | | Ada Brown on 3/25/2024) (cfk) (Entered: 03/26/2024) |
| 03/25/2024 | 48 (p.1023) | FINAL JUDGMENT: The Court has dismissed all of Plaintiff Robert Hopkins, III's claims. Accordingly, Plaintiff Robert Hopkins, III's case is dismissed with prejudice. (Ordered by Judge Ada Brown on 3/25/2024) (cfk) (Entered: 03/26/2024) |
| 05/07/2024 | 49 (p.1024) | Unopposed MOTION for Reconsideration re 47 (p.1006) Memorandum Opinion and Order, 48 (p.1023) Judgment filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 05/07/2024) |
| 05/07/2024 | 50 (p.1030) | Unopposed MOTION for Extension of Time to File Notice of Appeal filed by Robert Hopkins, III with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (McClanahan, Kelly) (Entered: 05/07/2024) |
| 05/20/2024 | 51 (p.1034) | ORDER: The Court hereby DENIES Plaintiff Hopkins motion for reconsideration. (ECF No. 49 (p.1024) ). Plaintiff Hopkins' motion for enlargement of time within which to file notice of appeal is also DENIED. (ECF No. 50 (p.1030) ). (Ordered by Judge Ada Brown on 5/20/2024) (ndt) (Entered: 05/20/2024) |
| 05/24/2024 | 52 (p.1036) | NOTICE OF APPEAL as to 48 (p.1023) Judgment to the Fifth Circuit by Robert Hopkins, III. Filing fee $605, receipt number ATXNDC-14647402. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (McClanahan, Kelly) (Entered: 05/24/2024) |
| 06/05/2024 | 53 (p.1037) | Transcript Order Form: re 52 (p.1036) Notice of Appeal, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (McClanahan, Kelly) (Entered: 06/05/2024) |
| 06/06/2024 | | USCA Case Number 24-10462 in USCA5 for 52 (p.1036) Notice of Appeal filed by Robert Hopkins, III. (axm) (Entered: 06/06/2024) |

TAB 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### *DALLAS DIVISION*

Hopkins
Plaintiff

3:22-CV-00706-E
CASE NUMBER

v.

DOD
Defendant

Brown
JUDGE

## NOTICE OF APPEAL

Notice is hereby given that _____ Robert Hopkins, III _____
(Appellant's Name)

appeals to the United States Court of Appeals for the Fifth Circuit from the

judgment
(conviction and sentence); (sentence only); (order);(judgment)

entered in this action on _____ 25 March 2024 _____
(Date)

Date        24 May 2024

Attorney/Pro Se Litigant Signature    /s/ Kel McClanahan

Print Name        Kel McClanahan

Address        4702 Levada Terrace

City, State, Zip    Rockville, MD 20853

Telephone        301-728-5908

TAB 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00706-E |
| | § | |
| DEPARTMENT OF DEFENSE, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**FINAL JUDGMENT**

Having **GRANTED** Defendant Department of Defense's Motion to Dismiss and for

Summary Judgment, (ECF No. 32), the Court has dismissed all of Plaintiff Robert Hopkins, III's

claims. Accordingly, Plaintiff Robert Hopkins, III's case is **dismissed with prejudice**. This is a

final judgment. *See* Fed. R. Civ. P. 54.


**SO ORDERED:** March 25, 2024.


ADA BROWN
UNITED STATES DISTRICT JUDGE

TAB 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00706-E |
| | § | |
| DEPARTMENT OF DEFENSE, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## ORDER

Before the Court are two motions filed by Plaintiff Robert Hopkins, III: (1) Plaintiff's Unopposed Motion for Reconsideration, (ECF No. 49); and (2) Plaintiff's Unopposed Motion for Enlargement of Time within which to File Notice of Appeal, (ECF No. 50). On March 25, 2024, the Court issued a memorandum opinion and order in which it dismissed all of Plaintiff Hopkins' claims with prejudice after concluding the Court lacked subject-matter jurisdiction to adjudicate his claims. (*See* ECF No. 47).

In his motion for reconsideration, Plaintiff Hopkins asserted that he demonstrated excusable neglect—the standard by which Fed. R. App. P. 60(b)(1) motions are measured—when he incorrectly assumed that his motion to stay would be granted, thus resulting in his failure to timely respond to Defendant Department of Defense's dispositive motion. (*See* ECF No. 49 at 1-2). However, Plaintiff Hopkins' incorrect assumption does not constitute excusable neglect, and thus, he has not shown himself entitled to reconsideration. The Court hereby **DENIES** Plaintiff Hopkins' motion for reconsideration. (ECF No. 49).

24-10462.1034

Further, because Plaintiff Hopkins failed to demonstrate excusable neglect, he cannot satisfy Fed. R. App. P. 4(a)(5), which permits a district court to extend the time to file a notice of appeal if "that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5). Thus, Plaintiff Hopkins' motion for enlargement of time within which to file notice of appeal is also **DENIED**. (ECF No. 50).

**SO ORDERED:** May 20, 2024.

Ada E. Brown
UNITED STATES DISTRICT JUDGE

TAB 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

ROBERT HOPKINS, III,               §
                                   §
     Plaintiff,                    §
                                   §
v.                                 §          Civil Action No. 3:22-CV-00706-E
                                   §
DEPARTMENT OF DEFENSE,             §
                                   §
     Defendant.                    §
                                   §
                                   §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Department of Defense's (the "DOD") Motion to Dismiss

and for Summary Judgment seeking dismissal or judgment on all of Plaintiff Robert Hopkins III's

("Hopkins") claims. (ECF No. 32). After reviewing the Parties' briefing, appendices, and

applicable law, the Court **GRANTS** the DOD's Motion and **dismisses with prejudice** all of

Hopkins' claims.

### I.    BACKGROUND

#### A.    Statutory and Regulatory Background

This case concerns an ex-Air Force Officer, Hopkins, who is attempting to publish certain

manuscripts containing allegedly classified information pertinent to the DOD. In order to

understand the facts of this case, it is first necessary to give a general overview of the

prepublication review process of such manuscripts.

> Any person who possesses a security clearance to access classified national security
> information must sign a Non-Disclosure Agreement ("NDA") agreeing, *inter alia*,
> to submit any documents related to his/her national security employment for
> prepublication review before publishing them. The two most common NDAs for
> classified information are the SF-312 (governing all classified information)  and
> Form   4414   (governing   a   subset   known   as   Sensitive   Compartmented

Information). An author generally submits a document to the agency which sponsors (or sponsored) his/her security clearance. Each agency generally has a specific office responsible for conducting prepublication review, although prepublication review is often not the sole responsibility of such an office. For example, DOPSR [the Defense Office of Prepublication and Security Review (hereinafter "DOPSR")] is responsible for coordinating prepublication review across DOD, but it does not perform any review itself. The DOD prepublication review system is primarily governed by DOD Instruction ("DODI") 5230.09, *Clearance of DoD Information for Public Release*, and DODI 5230.29, *Security and Policy Review of DoD Information for Public Release*. SAF/PA [United States Air Force Office of Public Affairs (hereinafter "SAF/PA")] is responsible for conducting prepublication review for the United States Air Force ("Air Force"). In addition to the DOD authorities listed above, the Air Force prepublication review system is primarily governed by Air Force Instruction ("AFI") 35-101, *Public Affairs Operations*, Chapter 9; AFI 35-102, *Security and Policy Review Process*; and Air Force Manual ("AFMAN") 35-101, *Public Affairs Procedures*, Chapter 8. The standard operating procedure for current and former Air Force personnel is to submit manuscripts to SAF/PA, which will usually complete its prepublication review within approximately two weeks. If SAF/PA determines that the manuscript requires coordination with other DOD components or other agencies, it may refer the manuscript to DOPSR after completing its review. Otherwise it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. SAF/PA will also refer a manuscript to DOPSR if it: "a. Originates or is proposed for release in the National Capital Region by senior personnel (e.g., general or flag officers and Senior Executive Service) on sensitive political or military topics; b. Is or has the potential to become an item of national or international interest; c. Affects national security policy, foreign relations, or ongoing negotiations; d. Concerns a subject of potential controversy among the DoD Components or with other federal agencies; e. Is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson; or f. Contains technical data" ("3-1 Criteria"). If an author knows in advance that a manuscript will require coordination with several DOD components or meets one of the 3-1 Criteria, the author may submit the manuscript directly to DOPSR. DOPSR will not complete its prepublication review in fewer than sixty days, and it maintains that it is not required to complete its review within any set time limit. After DOPSR completes its coordination with any DOD components that it deems relevant to a manuscript, it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. Manuscript submissions to SAF/PA must be accompanied by a standardized form. Manuscript submissions to DOPSR must be accompanied by a cover letter, although there is no standardized format. Both SAF/PA and DOPSR perform a two- step review of submitted manuscripts— identified as "security review" and "policy review"— although the scope of review differs subtly between the components. According to SAF/PA, "The purpose of the security review is to protect classified information, controlled unclassified sensitive information, or unclassified information that may

individually or in aggregate lead to an unauthorized disclosure or controlled unclassified information which can adversely impact national and operational security. The purpose of the policy review is to ensure no conflict exists with established AF, DoD, or other U.S. Government agency policies." Upon information and belief, SAF/PA conducts both types of review of all submitted manuscripts. According to DOPSR, "The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security. The policy review ensures that no conflict exists with established policies or programs of the DoD or the U.S. Government." Upon information and belief, DOPSR conducts both types of review of manuscripts submitted by current DOD employees, but only conducts a security review of manuscripts submitted by former DOD employees. It is not uncommon for authors to be represented by counsel during the prepublication review process, both in DOD and across the Executive Branch. It is common for such counsel to submit their clients' manuscripts for prepublication review and correspond with the respective prepublication review offices on their clients' behalf, especially if the client has no reason to believe the manuscript contains any classified information. The undersigned and other private attorneys who represent authors have submitted clients' manuscripts for prepublication review to various agencies and represented those clients in the prepublication review process without objections from the agencies.

(ECF No. 1 at 2-5).

**B.    Factual Background**

Hopkins brings this action against the DOD pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and the First Amendment of the Constitution of the United States. (ECF No. 1). From 1983-1991, Hopkins served in the Air Force. (ECF No. 1 at 5). At the time of his honorable discharge in 1991 with the rank of Captain, Hopkins had a Top Secret security clearance with access to Sensitive Compartmented Information ("TS/SCI"). (ECF No. 1 at 5). This case involves seven manuscripts Hopkins submitted to SAF/PA or DOPSR for prepublication review: (1) *Klaxon! Strategic Air Command Alert During the Cold War* ("*Klaxon!*"); (2) "Searching for Mobile ICBMS"; (3) *Crowded Skies: Cold War Reconnaissance Over the Baltic* ("*Crowded Skies*"); (4) "Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?"

("Bring Back the Looking Glass"); (5) "Effectiveness of the Air Force"; (6) "Why 15 Minutes

Is Irrelevant"; and (7) "DoD Prepublication Review: A Broken, Arbitrary System Predisposed to

Rejection" ("DoD Prepublication Review").

On December 14, 2020, Hopkins personally submitted the manuscript for *Klaxon!* to

SAF/PA for prepublication review. (ECF No. 1 at 7). As alleged, *Klaxon!* did not require

coordination with other DOD components or meet any of the 3-1 Criteria. (ECF No. 1 at 7). After

receiving no response from SAF/PA for over six months, Hopkins contacted them on July 8, 2021,

the same day SAF/PA acknowledged the submission of *Klaxon!*. (ECF No. 1 at 7-8). SAF/PA

stated that "due to the content of his manuscript, it will also need to be reviewed by [DOPSR]."

(ECF No. 1 at 8). On July 26, 2021, SAF/PA completed its review of *Klaxon!* and referred the

manuscript to DOPSR. (ECF No. 1 at 8). DOPSR then referred *Klaxon!* to three DOD components.

(ECF No. 1 at 8). Allegedly, Hopkins emailed DOPSR multiple times about *Klaxon!* in the months

following the referral and never received a response. (ECF No. 1 at 9).

On October 6, 2021, Hopkins submitted through counsel the manuscript for *Crowded Skies*

to DOPSR for prepublication review. (ECF No. 1 at 11). On October 18, 2021, DOPSR replied to

Hopkins acknowledging receipt of the submission of *Crowded Skies* and stating that DOPSR does

not work with an author's legal counsel, and that Hopkins would need to contact DOPSR directly.

(ECF No. 1 at 11-12). The email also provided that "[f]ailure to provide this information will result

in the denial of Security Review of this manuscript and administrative closure of this case." (ECF

No. 1 at 12). After receiving no response from Hopkins, DOPSR emailed Hopkins' counsel on

November 23, 2021, stating that DOPSR was closing the case based on the failure to respond.

(ECF No. 1 at 12).

On January 6, 2022, Hopkins submitted through counsel a blog article titled "Searching for

Mobile ICBMs" for prepublication review. (ECF No. 1 at 10). On January 14, 2022, Hopkins'

counsel submitted the following four articles: "Bring Back the Looking Glass?"; "Effectiveness of

the Air Force"; "Why 15 Minutes Is Irrelevant"; and "DoD Prepublication Review" to DPOSR

and informed DPOSR that "all correspondence regarding these submissions must be directed to

me." (ECF No. 1 at 12). As alleged, none of these manuscripts required coordination with other

DOD components or meet any of the 3-1 Criteria. (ECF No. 1 at 10-17).  DPOSR replied on

January 14, 2022, asking for cover letters for all submissions, which Hopkins' counsel promptly

submitted. (ECF No. 1 at 13). In the cover letter for *Crowded Skies*, Hopkins' counsel contended

that DPOSR's action was unreasonable and advised "that we [Hopkins] would seek judicial review

of DOPSR's denial if DPOSR did not expeditiously conduct a prepublication review of *Crowded

Skies*." (ECF No. 1 at 13). Further, on January 21, 2022, Hopkins' counsel emailed SAF/PA to

confirm receipt of "Searching for Mobile ICBMs." (ECF No. 1 at 10). SAF/PA replied that same

day stating that the article was forwarded to DOPSR for processing and that all of Hopkins' future

submission requests should be forwarded directly to DOPSR for security and policy review

processing. (ECF No. 1 at 10).

On February 28, 2022, DOPSR Chief George Sturgis ("Sturgis") sent the following email

("Sturgis Email") to Hopkins' counsel:

> We note that you have submitted several prepublication review requests on behalf
> of your client, Dr. Hopkins, most recently on January 14, 2022. An Action Officer
> emailed you last fall regarding Dr. Hopkins' second book submission [*Crowded
> Skies*] informing you that DOPSR needed the author's contact info, and that
> DOPSR could not start the review without his information. As you did not
> respond to multiple requests, DOPSR closed Dr. Hopkins' book submission on
> November 24, 2021. You have indicated that you are the sole correspondent for Dr.
> Hopkins' submissions, and that DOPSR is not right to administratively close any
> of the submissions. This is incorrect. As Dr. Hopkins is the author, held a
> security clearance, and has the prepublication obligation, he has the institutional
> responsibility and legal requirement to ensure that there is no non-public DoD
> information in the submissions. DoD's relationship is with the author, not his

legal representative. Failure of the author to correspond with the DoD evades the intent of the prepublication review process to not disclose non-public DoD Information. Our insistence on this process is standard DoD policy. To underscore the seriousness of this matter, reviewing components have identified instances of non-public information in Dr. Hopkins' first book submission, and based on the subject of the submissions, there is a likelihood that the second book and articles contain non-public DoD information. Providing this material to you is a violation of Dr. Hopkins' non-disclosure agreement. This violation could result in an Unauthorized Disclosure investigation by the Defense Counterintelligence and Security Agency. DoD's continued engagement with you perpetuates and endorses this unauthorized disclosure of DoD information by sanctioning your unauthorized access to the author's submissions. Hence, we are closing all of Dr. Hopkins' requests until he contacts our office.

(ECF No. 1 at 14-15). Thus, pursuant to the Sturgis Email, DPOSR administratively closed all of Hopkins' submissions because counsel did not provide contact information for Hopkins.

At some point after the Sturgis Email, DOPSR obtained the requisite contact information for Hopkins and completed the review of his manuscripts. (ECF No. 32-3 at 14).

## C.    Procedural Framework

Hopkins initiated this lawsuit on March 27, 2022, asserting eleven causes of action against the DOD under the First Amendment and the APA: (1) SAF/PA's referral of *Klaxon!* to DOPSR; (2) SAF/PA's referral of "Searching for Mobile ICBMS" to DOPSR; (3) SAF/PA's refusal to accept submissions; (4) DOPSR's administrative closure of *Klaxon!*; (5) DOPSR's administrative closure of "Searching for Mobile ICBMS; (6) DOPSR's administrative closure of *Crowded Skies*; (7) DOPSR's administrative closure of "Bring Back the Looking Glass?"; (8) DOPSR's administrative closure of "Effectiveness of the Alert Force"; (9) DOPSR's administrative closure of "Why 15 Minutes Is Irrelevant"; (10) DOPSR's administrative closure of "DOD Prepublication Review"; and (11) DOPSR's refusal to accept counsel's submissions. (ECF No. 1).

On October 4, 2023, the DOD filed its motion to dismiss and for summary judgment seeking dismissal or judgment on all of Hopkins' claims, (ECF No. 32), along with its brief in

support, (ECF No. 32-1), and unclassified appendix, (ECF No. 32-3). Hopkins filed a motion for

extension of time to file response on October 23, 2023, (ECF No. 33), which the Court granted on

October 24, 2023, (ECF No. 34), extending Hopkins' deadline to respond to January 5, 2024.

However, instead of filing a response by this deadline, on January 3, 2024, Hopkins filed an

unopposed motion to stay briefing of the DOD's motion to dismiss and for summary judgment

pending the Court's resolution of Hopkins' forthcoming two procedural motions. (ECF No. 35).

Later that same day, Hopkins filed a partially unopposed motion to stay briefing of the DOD's

motion to dismiss and for summary judgment pending the Court's resolution of Hopkins'

forthcoming two procedural motions, corrected to accurately reflect the DOD's position on the

motion. (ECF No. 37). Thus, Hopkins' first motion to stay is **DENIED AS MOOT**. (ECF No. 35).

On January 5, 2024, Hopkins filed one of the aforementioned procedural motions: a motion

to unseal the DOD's motion to dismiss for lack of jurisdiction or for summary judgment, (ECF

No. 38). On January 24, 2024, the DOD responded to Hopkins' motion to stay briefing, (ECF No.

37), and Hopkins' motion to unseal, (ECF No. 38). (ECF No. 39). Hopkins replied in two separate

filings on February 7, 2024. (ECF Nos. 40-41). Additionally, on February 12, 2024, Hopkins filed

the second of the aforementioned motions: a motion to authorize his counsel to access his intended

evidence. (ECF No. 42). The DOD responded to this motion on March 4, 2024. (ECF No. 43).

The Court gave Hopkins a lengthy extension to respond to the DOD's motion to dismiss

and for summary judgment, and rather than file a response in this period of over two months,

Hopkins waited until two days before the deadline to file a motion to stay. Not only is this motion

to stay not a response, but the Court also **DENIES** Hopkins' motion to stay. (ECF No. 37).

Thus, Hopkins motion to unseal, (ECF No. 38), and Hopkins' motion to authorize, (ECF No. 42),

are **DENIED AS MOOT**. Further, since the deadline has passed to respond to the DOD's motion

to dismiss and for summary judgment, the Court must conclude that Hopkins has wholly failed to respond. Thus, the DOD's motion to dismiss and for summary judgment is ripe for consideration.

## II.   LEGAL STANDARD

### A.    12(b)(1) Motion to Dismiss

A district court properly dismisses a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 191 (5th Cir. 2001). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton, 529 F.3d 548, 557* (5th Cir. 2008).

### B.    Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. Celotex*, 477 U.S. at 322–25 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see generally Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194) (discussing affirmative defenses).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual

controversy exists, that is, when both parties have submitted evidence of contradictory facts."

*Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). When a plaintiff fails to

defend a claim in response to a summary judgment motion, the claim is deemed abandoned. *See*

*Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff

abandoned her retaliatory abandonment claim when she failed to defend the claim in response to

a motion to dismiss).

"A party opposing such a summary judgment motion may not rest upon mere allegations

contained in the pleadings, but must set forth and support by summary judgment evidence specific

facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136

F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has

explained:

> The party opposing summary judgment is required to identify specific evidence in
> the record and to articulate the precise manner in which that evidence supports his
> or her claim.... "Rule 56 does not impose upon the district court a duty to sift
> through the record in search of evidence to support a party's opposition to summary
> judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th
> Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required
> by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the
> motion [and] (3) grant summary judgment if the motion and supporting materials—
> including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

### III.  ANALYSIS

### A.    Claim Abandonment

Northern District of Texas Local Civil Rule 7.1(e) instructs that "[a] response and brief to

an opposed motion must be filed within 21 days from the date the motion is filed." N.D. Tex. Loc.

---

Civ. R. 7.1(e). A party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in her response to a motion to dismiss constitutes abandonment. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court).

Here, Hopkins failed to respond to the DOD's motion to dismiss and for summary judgment—the Court granted Hopkins a lengthy extension past 21 days to respond, and Hopkins failed to do so. *See* N.D. Tex. Loc. Civ. R. 7.1(e). Although Hopkins filed a motion for extension of time to file a response to the DOD's motion, which the Court granted and allowed Hopkins until January 5, 2024, to file his response, Hopkins instead filed only a last-ditch effort motion to stay briefing—which is not a response. Because Hopkins wholly failed to respond to the DOD's challenge to subject-matter jurisdiction on all his claims, the Court concludes Hopkins has abandoned all his claims. *See Black*, 461 F.3d at 588 n.1; *Matter of DallasRoadster, Ltd.*, 846 F.3d at 126; *Vela*, 276 F.3d at 678-79.[1] Thus, the Court GRANTS the DOD's motion to dismiss and for

---

[1] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

summary judgment. (ECF No. 32).

### B.     Lack of Subject-Matter Jurisdiction

Notwithstanding Hopkins' abandonment discussed above, the DOD argues that Hopkins lacks subject-matter jurisdiction because his claims are nonjusticiable. (ECF No. 32-1). Specifically, the DOD asserts that Hopkins' "claims are moot as to the manuscripts listed in the Complaint, which have already completed prepublication review." (ECF No. 32-1 at 24). Thus, the DOD asserts that all of Hopkins' causes of action except for the third, are moot. (ECF No. 32-1 at 24). Additionally, the DOD argues that "to the extent he [Hopkins] intends to challenge the procedures that may be used to review other, hypothetical manuscripts in the future, he lacks standing to do so, and his claims are not ripe." (ECF No. 32-1 at 24). Thus, the DOD asserts that Hopkins lacks standing to assert his third and eleventh causes of action, and such challenges are unripe. (ECF No. 32-1 at 27).

"The justiciability of an issue [] is determined by the doctrines of standing, mootness, and ripeness." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998). "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues it presents—the court lacks subject-matter jurisdiction. *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004). Thus, before considering any other matters raised in the case, the court is obligated to "resolve the standing question as a threshold matter of jurisdiction." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007).

"As a general rule, any set of circumstances that eliminates actual controversy after the

commencement of a lawsuit renders that action moot." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008). "As long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation"—the case should not be declared moot. *Dailey*, 141 F.3d at 227. But a case will become moot where "there are no longer adverse parties with sufficient legal interests to maintain the litigation" or "when the parties lack a legally cognizable interest in the outcome" of the litigation. *In re Scruggs*, 392 F.3d at 128. "As the Supreme Court has noted, 'it is not enough that a dispute was very much alive when the suit was filed; ... [t]he parties must continue to have a personal stake in the outcome of the lawsuit.'" *Env't Conservation Org.*, 529 F.3d at 527 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

The essence of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing under Article III of the Constitution, a plaintiff must demonstrate: "(1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007). The injury-in-fact element requires a plaintiff show that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (emphasis omitted).

Additionally, a plaintiff's claims must be ripe for adjudication. *Roark & Hardee LP*, 522 F.3d at 544. As stated by the Supreme Court, the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."

*Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993). To assess whether a case is ripe, the Supreme Court has stated that the key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Monk v. Houston*, 340 F.3d 279, 282 (5th Cir. 2003). "A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Monk*, 340 F.3d at 282.

As to the DOD's assertion that Hopkins' procedural claims—causes of action one, two, and four through eleven[2]—are moot to the extent they challenge the manner in which the DOD reviewed his manuscripts and seek only relief that is unavailable or has already been granted, the Court agrees. The relief that Hopkins requests as to these claims is to compel SAF/PA or DOPSR to expedite its review or issue a final determination as to these manuscripts. Specifically, as to counts one and two Hopkins requests relief in the form of: "(a) a declaratory judgment that SAF/PA violated Air Force and DOD regulations and the First Amendment by referring" *Klaxon!* and "Searching for Mobile ICBMs" to DOPSR; and (b) an injunction compelling SAF/PA to immediately issues its determinations as final responses to Hopkins. (ECF No. 1 at 19-20). Additionally, as to counts four through ten alleging administrative closure of multiple of Hopkins' manuscripts, Hopkins again requests: (a) a declaratory judgment that DOPSR violated DOD regulations and the First Amendment by administratively closing the manuscripts, and (b) multiple types of injunctive relief compelling DOPSR to issue final responses as to Hopkins' manuscripts. (ECF No. 1 at 23-34). And lastly, as to count eleven, Hopkins requests: (a) a declaratory judgment that DOPSR's alleged policy violates DOD regulations and the First Amendment, and (b) an injunction prohibiting any DOD component from administratively closing a request for

---

[2] The DOD argues that Hopkins' eleventh cause of action is moot, unripe, and Hopkins lacks standing to bring it. Thus, it will be analyzed under all three elements of justiciability.

prepublication review solely due to the fact that a document was submitted by an author client's counsel. (ECF No. 1 at 25-36). However, all such relief has already been received—the prepublication review of all of Hopkins' manuscripts has been completed. The fact that Hopkins disagrees with the final determinations rendered—that his manuscripts were administratively closed; or which department rendered such determinations—SAF/PA's referral of Hopkins' manuscripts to DOPSR—does not mean an actual controversy still exists. *See Env't Conservation Org.*, 529 F.3d at 527. Moreover, as effective relief is no longer available to remedy the effect of the violation, causes of action one, two, four, five, six, seven, eight, nine, ten, and eleven must be declared moot. *See Dailey,* 141 F.3d at 227 (stating that a case will become moot if no effective relief is available to remedy the effect of the violation).

The DOD also asserts that Hopkins does not have standing to pursue his third and eleventh causes of actions, arguing there is no "impending injury." (ECF No. 32-1 at 29). First, the DOD argues that Hopkins does not present any evidence as to additional manuscripts he has submitted or intends to submit in the future. Thus, Hopkins' third cause of action alleging that Hopkins is required to submit all future manuscripts directly to DOPSR instead of SAF/PA which will "deprive[] him of numerous benefits to which he is entitled, including, but not limited, a prompt review process which respects publishers' deadlines," is unfounded. (ECF No. 1 at 21). The manuscripts that were already referred to the DOPSR have now been decided by the DOPSR, thus there is no relief left to receive, and the future manuscripts alluded to by Hopkins do not constitute a concrete and particularized injury-in-fact. *See Roark & Hardee LP*, 522 F.3d at 542 (the injury-in-fact element requires a plaintiff "show that he or she has sustained or *is immediately in danger*

*of sustaining* some direct injury").[3] As to Hopkins' eleventh claim, he asserts:

> DOD has an official policy of administratively closing any requests for prepublication review submitted by an attorney on behalf of an author . . . [and] [a]s a well-respected author of military history books and articles with a continuing duty to submit materials for prepublication review, Hopkins will continue to be harmed by this policy in the future.

(ECF No. 1 at 34-35). Even if Hopkins presented evidence that such policy exists, the injury he alludes to is "conjectural or hypothetical," not real and immediate. *See Roark & Hardee LP*, 522 F.3d at 542 (concluding that "the injury or threat of injury must be both real and immediate"). Thus, Hopkins lacks standing to bring his third and eleventh causes of action, and these claims must be dismissed. Further, for these same reasons that Hopkins lacks standing to assert his third and eleventh causes of action, these claims are also unripe. Because the claims are "abstract or hypothetical," they must be dismissed for lack of ripeness. *See Monk*, 340 F.3d at 282; *see also Neresova v. Suntrust Mortg., Inc.*, No. 3:11-CV-976-BH, 2011 WL 13127891, at *3 (N.D. Tex. Nov. 16, 2011) (Dismissal on grounds of ripeness is appropriate when "no irremediabl[y] adverse consequences flow from requiring a later challenge.")

    In sum, the Court concludes it lacks subject-matter jurisdiction to adjudicate all of Hopkins' claims, and thus, all of his claims must be dismissed.

## IV. CONCLUSION

    For the reasons discussed above, the Court **GRANTS** the DOD's motion to dismiss or for summary judgment, (ECF No. 32), and all of Hopkins' claims are hereby **dismissed with prejudice**. Further, Hopkins' unopposed motion to stay is **DENIED AS MOOT**, (ECF No. 35); Hopkins' partially unopposed motion to stay, (ECF No. 37), is **DENIED**, and thus, Hopkins'

---

[3] *See also Sullo & Bobbit P.L.L.C. v. Abbot*, 536 F. App'x 473, 477 (5th Cir. 2013) ("A plaintiff in a declaratory action may establish injury in fact by establishing actual present harm or a significant possibility of future harm, and if he relies on future harm he must be *immediately in danger of sustaining* some direct injury.")

motion to unseal, (ECF No. 38), and Hopkins' motion to authorize, (ECF No. 42), are **DENIED AS MOOT**.

       **SO ORDERED:** March 25,  2024.

Ada E. Brown
UNITED STATES DISTRICT JUDGE

TAB 6

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

### Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 |
| | * | |
| DEPARTMENT OF DEFENSE, | * | **Jury Trial Requested** |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

Plaintiff Robert Hopkins, III, brings this action against Defendant Department of Defense pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651, and the First Amendment to the Constitution of the United States.

## JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

## VENUE

2.      Venue is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Robert Hopkins, III ("Hopkins") is a U.S. citizen and a resident of the State of Texas.

4.      Defendant Department of Defense ("DOD") is an agency within the meaning of 5 U.S.C. § 701 and subject to the jurisdiction of this Court. DOD's actions have unreasonably

delayed and prevented Hopkins from publishing his intended manuscripts, as well as interfering with his attorney-client relationship with his undersigned counsel.

5.     The United States Air Force Office of Public Affairs ("SAF/PA") and Defense Office of Prepublication and Security Review ("DOPSR") are DOD components.

## BACKGROUND

### PART I: PREPUBLICATION REVIEW IN GENERAL

6.     Any person who possesses a security clearance to access classified national security information must sign a Non-Disclosure Agreement ("NDA") agreeing, *inter alia*, to submit any documents related to his/her national security employment for prepublication review before publishing them.

7.     The two most common NDAs for classified information are the SF-312 (governing all classified information) and Form 4414 (governing a subset known as Sensitive Compartmented Information).

8.     An author generally submits a document to the agency which sponsors (or sponsored) his/her security clearance.

9.     Each agency generally has a specific office responsible for conducting prepublication review, although prepublication review is often not the sole responsibility of such an office.

10.     For example, DOPSR is responsible for coordinating prepublication review across DOD, but it does not perform any review itself. The DOD prepublication review system is primarily governed by DOD Instruction ("DODI") 5230.09, *Clearance of DoD Information for Public Release*, and DODI 5230.29, *Security and Policy Review of DoD Information for Public Release*.

2

24-10462.10

11.     SAF/PA is responsible for conducting prepublication review for the United States Air Force ("Air Force"). In addition to the DOD authorities listed above, the Air Force prepublication review system is primarily governed by Air Force Instruction ("AFI") 35-101, *Public Affairs Operations*, Chapter 9; AFI 35-102, *Security and Policy Review Process*; and Air Force Manual ("AFMAN") 35-101, *Public Affairs Procedures*, Chapter 8.

12.     The standard operating procedure for current and former Air Force personnel is to submit manuscripts to SAF/PA, which will usually complete its prepublication review within approximately two weeks.

13.     If SAF/PA determines that the manuscript requires coordination with other DOD components or other agencies, it may refer the manuscript to DOPSR after completing its review. Otherwise it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information.

14.     SAF/PA will also refer a manuscript to DOPSR if it: "a. Originates or is proposed for release in the National Capital Region by senior personnel (e.g., general or flag officers and Senior Executive Service) on sensitive political or military topics; b. Is or has the potential to become an item of national or international interest; c. Affects national security policy, foreign relations, or ongoing negotiations; d. Concerns a subject of potential controversy among the DoD Components or with other federal agencies; e. Is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson; or f. Contains technical data" ("3-1 Criteria").[1]

15.     If an author knows in advance that a manuscript will require coordination with several DOD components or meets one of the 3-1 Criteria, the author may submit the manuscript

---

[1] This is not a standard term; it is used herein purely for convenience to indicate that the criteria appear in DODI 5230.29, Enclosure 3, Section 1.

directly to DOPSR. DOPSR will not complete its prepublication review in fewer than sixty days, and it maintains that it is not required to complete its review within any set time limit.

16.    After DOPSR completes its coordination with any DOD components that it deems relevant to a manuscript, it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information.

17.    Manuscript submissions to SAF/PA must be accompanied by a standardized form. Manuscript submissions to DOPSR must be accompanied by a cover letter, although there is no standardized format.

18.    Both SAF/PA and DOPSR perform a two-step review of submitted manuscripts—identified as "security review" and "policy review"—although the scope of review differs subtly between the components.

19.    According to SAF/PA, "The purpose of the security review is to protect classified information, controlled unclassified sensitive information, or unclassified information that may individually or in aggregate lead to an unauthorized disclosure or controlled unclassified information which can adversely impact national and operational security. The purpose of the policy review is to ensure no conflict exists with established AF, DoD, or other U.S. Government agency policies."

20.    Upon information and belief, SAF/PA conducts both types of review of all submitted manuscripts.

21.    According to DOPSR, "The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security.

4

The policy review ensures that no conflict exists with established policies or programs of the DoD or the U.S. Government."

22.    Upon information and belief, DOPSR conducts both types of review of manuscripts submitted by current DOD employees, but only conducts a security review of manuscripts submitted by former DOD employees.

23.    It is not uncommon for authors to be represented by counsel during the prepublication review process, both in DOD and across the Executive Branch. It is common for such counsel to submit their clients' manuscripts for prepublication review and correspond with the respective prepublication review offices on their clients' behalf, especially if the client has no reason to believe the manuscript contains any classified information.

24.    The undersigned and other private attorneys who represent authors have submitted clients' manuscripts for prepublication review to various agencies and represented those clients in the prepublication review process without objections from the agencies.

### *PART II: HOPKINS'S MANUSCRIPTS*

**Background**

25.    From 1983-1991, Hopkins served in the Air Force. He was honorably discharged in 1991 with the rank of Captain. At the time of his discharge, Hopkins had a Top Secret security clearance with access to Sensitive Compartmented Information, colloquially known as a "TS/SCI clearance."

26.    In 1998, Hopkins received a Ph.D. in U.S. History from the University of Virginia, with a focus on national security history.

27.    In 2016, Hopkins published an updated version of his Ph.D. dissertation as *Spyflights and Overflights: US Strategic Aerial Reconnaissance Vol. I: 1945-1960.*

24-10462.13

28.     Because Hopkins had written this book using exclusively public and declassified records, he did not submit the manuscript for prepublication review, since Air Force official guidance stated that "former members and retired personnel" were "encouraged" but not required to submit manuscripts for prepublication review.

29.     Hopkins did submit the manuscript for his second book to SAF/PA for prepublication review because it contained technical data, and SAF/PA cleared it for public release.

30.     An unknown person falsely reported Hopkins in late 2018 or early 2019 to the Air Force Office of Special Investigations ("OSI") for allegedly including classified information in the then-unpublished manuscript for his third book, *Strategic Air Command in the UK: SAC Operations 1946-1992* ("*SAC in the UK*"). When he discussed the manuscript with an Air Force Judge Advocate General officer in March 2019, she confirmed that as long as he was no longer an active duty or reserve officer and used only public domain material, he was not obligated to submit his manuscripts for prepublication review.

31.     OSI did not find any wrongdoing on Hopkins's part.

32.     On 20 August 2019, Hopkins nonetheless voluntarily submitted, through undersigned counsel, the *SAC in the UK* manuscript to SAF/PA official Carolyn Oredugba ("Oredugba") for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records. Oredugba, who has been consistently identified as the official SAF/PA point of contact for prepublication review matters, corresponded with the undersigned about this submission without objection.

33.     The version of the *SAC in the UK* manuscript submitted to SAF/PA was substantively identical to the version in which Hopkins had been falsely accused of including classified information.

34.     On 29 August 2019, Oredugba informed the undersigned, "The manuscript for your client, Dr Hopkins, has been cleared for public release."

35.     On 16 December 2019, Hopkins published *SAC in the UK*.

### Manuscripts Submitted to SAF/PA

*1.*     ***Klaxon!***

36.     On 14 December 2020, Hopkins personally submitted the manuscript for his fourth book, *Klaxon! Strategic Air Command Alert During the Cold War* ("*Klaxon!*"), to Oredugba—with a copy to her associate Beverly Sumpter ("Sumpter")—for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

37.     *Klaxon!* did not require coordination with other DOD components or meet any of the 3-1 Criteria.

38.     Hopkins did not receive an "undelivered mail" message from either Oredugba or Sumpter.

39.     Neither Oredugba nor Sumpter responded to Hopkins for over six months.

40.     On 8 July 2021, the undersigned contacted Oredugba about *Klaxon!*. He stated, "There appears to have been some breakdown in the process, as [Hopkins] has informed me that he attempted to contact the appropriate offices several months ago but received no response. Because his publisher's deadline is fast approaching, we would respectfully request a quick review of this, especially given his history of publishing unclassified material and the

24-10462.15

bibliography he has provided (and the comparatively short length of the book). Since we don't know what happened to the previous attempts, I've refilled out the submission form, dated today."

41.    Twelve minutes later, Oredugba acknowledged the submission of *Klaxon!* but stated that "due to the content of his manuscript, it will also need to be reviewed by [DOPSR]."

42.    Over the course of several emails, Oredugba claimed that neither she nor Sumpter had a record of receiving Hopkins's 14 December 2020 email. She stated that she would not reconsider her determination that a referral to DOPSR was appropriate, yet also prohibited the undersigned from submitting the manuscript directly to DOPSR to save time, stating, "The AF will review the manuscript and then I will forward to DOPSR for review. DOPSR will not review the manuscript until the Air Force has reviewed the document." At no point did she object to corresponding with the undersigned about the matter instead of Hopkins.

43.    On 26 July 2021, SAF/PA completed its review of *Klaxon!* and referred the manuscript to DOPSR. As of this writing, SAF/PA has not informed Hopkins of the results of its review.

44.    On 29 July 2021, the undersigned emailed a senior DOD attorney about *Klaxon!*, attempting to resolve the matter quickly so that Hopkins would not miss his publishing deadline. He reiterated that the manuscript was exclusively sourced from publicly released and declassified records, that the sources were explicitly identified, that Hopkins had a history of writing such books based solely on such sources, and that the subject matter of the book was the same as *SAC in the UK*, which had not required referral to DOPSR.

45.    The DOD attorney replied that "DOPSR's assessment is that the contents include subject matter of interest to at least two DoD components, which requires a referral to those

8

organizations for review." He stated that DOPSR would expedite the process and then referred the undersigned to Alci Ortiz ("Ortiz"), stating, "He should be your point of contact for further questions and can help check on the status of the review, if necessary."

46.     On 5 August 2021, Ortiz informed the undersigned that DOPSR had referred *Klaxon!* to three DOD components, which he refused to identify.

47.     On 1 September 2021, the undersigned emailed Ortiz, "Please provide an update, as it has been 30 days. How many components have completed their review, how many are left, when we can expect a final response, etc." Ortiz did not respond.

48.     On 6 October 2021, the undersigned emailed Ortiz, "Sir, I have not yet received a response to this request. It has now been more than 60 days, and more than 30 days from my last attempt to obtain information from you." Ortiz did not respond.

49.     On 14 January 2022, the undersigned emailed Ortiz, with a CC to the senior DOD attorney, "Mr. Ortiz, it has now been almost six months since the AF gave a copy of my client's book to DOPSR and you told me it was being referred to 3 components, and [the senior DOD attorney] said that DOPSR was willing to expedite the process. Since then I have attempted to get status updates from you twice, with no response, and DOPSR has not said a single word to us about this manuscript. This manuscript was explicitly sourced from public documents and should not have taken a small fraction of this much time to review. Please provide me with a detailed status update and an estimate of when we can expect to receive final clearance, or we will have to proceed to litigation."

50.     As of this writing, neither Ortiz nor the senior DOD attorney have responded to the above messages.

24-10462.17

51.    On 28 February 2022, DOPSR Chief George Sturgis ("Sturgis") sent the undersigned an email ("Sturgis Email") which will be discussed in greater detail in paragraphs 71-74 below, which stated in pertinent part that DOPSR was "closing all of Dr. Hopkins' requests until he contacts [its] office."

52.    On 4 March 2022, SAF/PA informed Hopkins that the processing of *Klaxon!* was complete, stating, "The material was assigned a clearance of WITHDRAWN on 04 Mar 2022."

53.    Hopkins did not withdraw *Klaxon!*. Upon information and belief, DOPSR appears to have falsely informed SAF/PA that the manuscript was withdrawn as a result of the Sturgis Email.

**2.    *"Searching for Mobile ICBMs"***

54.    On 6 January 2022, Hopkins submitted, through undersigned counsel, a six-page blog article entitled "Searching for Mobile ICBMs" to Oredugba for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

55.    "Searching for Mobile ICBMs" did not require coordination with other DOD components or meet any of the 3-1 Criteria.

56.    On 14 January 2022, after receiving no response from Oredugba, the undersigned emailed her, "Please confirm receipt of this email. I am concerned by your silence in light of the fact that you claimed not to receive my client's last submission."

57.    On 21 January 2022, Oredugba replied, "We received the security and policy review request on behalf of Mr. [sic] Robert Hopkins; however, the article was forwarded to [DOPSR] for processing. In the future, please forward all of Mr. [sic] Hopkins' submission request directly to DOPSR for security and policy review processing."

24-10462.18

58.    As of this writing, DOPSR has not provided any information to Hopkins about "Searching for Mobile ICBMs."

59.    Upon information and belief, DOPSR appears to have stopped processing "Searching for Mobile ICBMs" pursuant to the Sturgis Email.

**Manuscripts Submitted to DOPSR**

*1.    Crowded Skies*

60.    On 6 October 2021, Hopkins submitted, through undersigned counsel, the manuscript for his fifth book, *Crowded Skies: Cold War Reconnaissance Over the Baltic* ("*Crowded Skies*"), to DOPSR for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

61.    Notably, *Crowded Skies* dealt with significantly different subject matter than *Klaxon!* except for a few tangential references, specifically with respect to the fact that intelligence collected by reconnaissance missions over the Baltic—the subject matter of *Crowded Skies*—would be used in support of Strategic Air Command alert missions—the subject matter of *Klaxon!*—if any were launched.

62.    The submission email did not include a cover letter because neither the undersigned nor Hopkins had been informed by that time that one was necessary. The undersigned, however, stated in the email, "Normally these are submitted directly to the USAF, but since we already know that it contains US Navy equities, we are submitting it directly to DOPSR for coordination between the different offices."

63.    On 18 October 2021, DOPSR official Paul Jacobsmeyer ("Jacobsmeyer") replied to the undersigned, acknowledging receipt of the *Crowded Skies* submission. Jacobsmeyer, however, stated, "DOPSR does not work with, or accommodate, publishers' timelines, nor do we

11

work with an author's legal counsel or literary representative. Please have the author contact us directly with appropriate contact information, and we will provide him/her with an acknowledgement of the manuscript. Failure to provide this information will result in the denial of Security Review of this manuscript and administrative closure of this case."

64.     On 23 November 2021, Jacobsmeyer emailed the undersigned, "As we have received no response to our request below soliciting contact information with the author of the subject manuscript, DOPSR is closing the case and taking no further action. Subsequent re-submission of the case will result in a new case number and position in the queue for the author."

65.     On 14 January 2022, Hopkins submitted, through undersigned counsel, four short articles to DOPSR, which will be discussed separately in paragraphs 75-87 below. The undersigned stated, "I am aware that Paul Jacobsmeyer has claimed that any submission not received directly from the author will be summarily denied. However, this policy—should it exist—is a violation of law, and if DOPSR chooses to deny clearance for these submissions based on the fact that my client has elected to have his lawyer handle the logistics of prepublication review for his fully unclassified manuscripts, please be aware that we will pursue all legal avenues at our disposal. Should you desire to meet with my client to discuss any concerns, I will be happy to facilitate such a discussion, but all correspondence regarding these submissions must be directed to me."

66.     The undersigned further stated, "I similarly expect that DOPSR will reverse its denial of my client's 6 October 2021 submission, *Crowded Skies*, . . . and process it for release expeditiously, in light of the fact that your denial of that submission was exclusively based on the fact that I submitted the unclassified manuscript to DOPSR. Should you fail to do so, we will file a complaint in the appropriate federal district court."

24-10462.20

67.     The same day, DOPSR official Tim West ("West") replied to the undersigned, asking, "Do you have the cover letters for these submissions? We just need one to make a complete record. Please include contact info, a date you would the review complete, and a statement that says to the best of your knowledge, it does not contain classified info."

68.     The undersigned replied, "Is there a particular form you would like me to use?" West replied, "No form is required. Forms are only for other DoD agencies. Usually, you would use your office letterhead when submitted on anothers [sic] behalf. Any format is ok, we just need it for our records."

69.     On 14 January 2022, the undersigned submitted a cover letter regarding *Crowded Skies* to DOPSR, which summarized the dispute with Jacobsmeyer and concluded, "Today I sent a new email to DOPSR explaining in part that this agency action was unreasonable and advising that we would seek judicial review of DOPSR's denial if DOPSR did not expeditiously conduct a prepublication review of *Crowded Skies*. I received a response from DOPSR stating that I needed to submit a cover letter containing certain information to complete your file. Thank you for resolving this matter, and please accept this letter for your records."

70.     To satisfy the criteria specified by West, the undersigned stated, "My contact information is in the letterhead at the top of this message. My client and I are available to discuss this document at your convenience. Because of the delay caused by Mr. Jacobsmeyer's denial and the fact that this book is currently scheduled to be published—not submitted to the publisher—in April 2022 after Dr. Hopkins pushed back the publisher's submission deadline several times to accommodate DOPSR's review, we request that you expedite your review of this manuscript and provide final clearance to publish as soon as possible. To the extent a specific date is required, please consider this a request for a response no later than 31 January

2022. Dr. Hopkins conducted his research for this book entirely from public sources—most of which are cited in the manuscript itself. To the best of my knowledge—and Dr. Hopkins's knowledge as well—this manuscript contains no classified information."

71.     On 28 February 2022, Sturgis sent the undersigned the Sturgis Email mentioned above: "We note that you have submitted several prepublication review requests on behalf of your client, Dr. Hopkins, most recently on January 14, 2022. An Action Officer emailed you last fall regarding Dr. Hopkins' second book submission informing you that DOPSR needed the author's contact info, and that DOPSR could not start the review without his information. As you did not respond to multiple requests, DOPSR closed Dr. Hopkins' book submission on November 24, 2021."

72.     Sturgis added, "You have indicated that you are the sole correspondent for Dr. Hopkins' submissions, and that DOPSR is not right to administratively close any of the submissions. This is incorrect. As Dr. Hopkins is the author, held a security clearance, and has the prepublication obligation, he has the institutional responsibility and legal requirement to ensure that there is no non-public DoD information in the submissions. DoD's relationship is with the author, not his legal representative. Failure of the author to correspond with the DoD evades the intent of the prepublication review process to not disclose non-public DoD information."

73.     Sturgis concluded, "Our insistence on this process is standard DoD policy. To underscore the seriousness of this matter, reviewing components have identified instances of non-public information in Dr. Hopkins' first book submission, and based on the subject of the submissions, there is a likelihood that the second book and articles contain non-public DoD information. Providing this material to you is a violation of Dr. Hopkins' non-disclosure

agreement. This violation could result in an Unauthorized Disclosure investigation by the Defense Counterintelligence and Security Agency. DoD's continued engagement with you perpetuates and endorses this unauthorized disclosure of DoD information by sanctioning your unauthorized access to the author's submissions. Hence, we are closing all of Dr. Hopkins' requests until he contacts our office."

74.     Sturgis did not explain why DOPSR has yet to mention any alleged "instances of non-public information" in *Klaxon!* to Hopkins, did not state if the allegedly "non-public information" is classified or not, did not identify the "standard DoD policy" to which he referred, and did not explain West's statement that "[u]sually, you would use your office letterhead when submitted on anothers [sic] behalf," which necessarily indicates the existence of a standard operating procedure for handling third-party submissions.

**2.    *"Bring Back the Looking Glass?"***

75.     On 14 January 2022, Hopkins submitted, through undersigned counsel, a four-page article entitled "Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?" ("'Bring Back the Looking Glass?'") to DOPSR for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

76.     To satisfy the criteria specified by West, the undersigned stated in the cover letter, "My contact information is in the letterhead at the top of this message. My client and I are available to discuss this document at your convenience. Please complete your review of this document by 15 March 2022. To the best of my knowledge—and Dr. Hopkins's knowledge as well—this document is sourced exclusively from publicly available information and contains no classified information."

77.     Upon information and belief, DOPSR appears to have stopped processing "Bring Back the Looking Glass?" pursuant to the Sturgis Email.

**3.     *"Effectiveness of the Alert Force"***

78.     On 14 January 2022, Hopkins submitted, through undersigned counsel, an eight-page article entitled "Effectiveness of the Alert Force" to DOPSR for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

79.     To satisfy the criteria specified by West, the undersigned stated in the cover letter, "My contact information is in the letterhead at the top of this message. My client and I are available to discuss this document at your convenience. Please complete your review of this document by 15 March 2022. To the best of my knowledge—and Dr. Hopkins's knowledge as well—this document is sourced exclusively from publicly available information and contains no classified information."

80.     Upon information and belief, DOPSR appears to have stopped processing "Effectiveness of the Alert Force" pursuant to the Sturgis Email.

**4.     *"Why 15 Minutes Is Irrelevant"***

81.     On 14 January 2022, Hopkins submitted, through undersigned counsel, a six-page article entitled "Why 15 Minutes Is Irrelevant" to DOPSR for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records.

82.     To satisfy the criteria specified by West, the undersigned stated in the cover letter, "My contact information is in the letterhead at the top of this message. My client and I are available to discuss this document at your convenience. Please complete your review of this

24-10462.24

document by 15 March 2022. To the best of my knowledge—and Dr. Hopkins's knowledge as well—this document is sourced exclusively from publicly available information and contains no classified information."

83.     Upon information and belief, DOPSR appears to have stopped processing "Why 15 Minutes Is Irrelevant" pursuant to the Sturgis Email.

**5.      *"DoD Prepublication Review"***

84.     On 14 January 2022, Hopkins submitted, through undersigned counsel, a five-page article entitled "DoD Prepublication Review: A Broken, Arbitrary System Predisposed to Rejection" ("'DoD Prepublication Review'") to DOPSR for prepublication review, even though it was exclusively sourced from publicly released information.

85.     Notably, "DoD Prepublication Review" dealt with significantly different subject matter than *Klaxon!*. In fact, it simply described Hopkins's efforts to obtain clearance for his manuscripts and compared his case to another recent case of a former Air Force member publishing information without prepublication clearance with apparently no consequences.

86.     To satisfy the criteria specified by West, the undersigned stated in the cover letter, "My contact information is in the letterhead at the top of this message. My client and I are available to discuss this document at your convenience. Please complete your review of this document by 15 March 2022. To the best of my knowledge—and Dr. Hopkins's knowledge as well—this document is sourced exclusively from publicly available information and contains no classified information."

87.     Upon information and belief, DOPSR appears to have stopped processing "DoD Prepublication Review" pursuant to the Sturgis Email.

24-10462.25

TAB 7

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

### Dallas Division

ROBERT HOPKINS, III,                    *
                                        *
          Plaintiff,                    *
                                        *
          v.                            *          Civil Action No. 3:22-cv-00706 (C)
                                        *
DEPARTMENT OF DEFENSE,                  *
                                        *
          Defendant.                    *
                                        *
*    *    *    *    *    *    *    *    *    *    *    *    *

## PLAINTIFF'S UNOPPOSED MOTION FOR STATUS CONFERENCE

NOW COMES Plaintiff Robert Hopkins ("Hopkins") to move this Court to order a status conference to resolve several issues regarding the Court's scheduling order and Defendant's refusal to timely engage in mediation as directed by the Court.

To provide the factual context for this Motion, Hopkins provides the following—unfortunately lengthy—recitation of the relevant history of this case:

1.  This case involves the prepublication review of seven manuscripts by the Defense Office of Prepublication and Security Review ("DOPSR").

2.  On 13 June 2022, the Court ordered the parties to take the case to mediation, which the Court stated must be completed by 15 June 2023.

3.  On 11 July 2022, Defendant's counsel emailed the undersigned, proposing two potential mediators and stating, "Defendants would like to complete mediation as soon as practicable."

4.  On 15 July 2022, the undersigned emailed Defendant's counsel, proposing a well-respected prepublication review specialist as a mediator, since neither of

Defendant's proposed mediators appeared to have any relevant experience in this area of the law.

5.    On 18 July 2022, Defendant's counsel emailed the undersigned, declining to accept the undersigned's proposed mediator on the grounds that he was not a practicing mediator and stating that Defendant preferred a retired judge.

6.    On 20 July 2022, Defendant's counsel emailed the undersigned, stating that DOPSR would contact Hopkins directly regarding any allegedly classified information identified in his manuscripts, adding, "[I]f DoD identifies any unclassified information that can be discussed with you present, we will let you know."

7.    On 21 July 2022, the undersigned emailed Defendant's counsel, proposing a retired judge who practices as a mediator and who has extensive national security experience.

8.    On 16 August 2022, Defendant's counsel emailed the undersigned, stating that Defendant "ha[s] no objection if [he] want[s] to try and obtain [the proposed mediator's] services for mediation."

9.    On 16 August 2022, the undersigned emailed Defendant's counsel, "Would you mind making the initial approach? He might respond better to a request coming from the DOJ than from a random private litigator."

10.    On 16 August 2022, Defendant's counsel emailed the undersigned, reversing course and stating, "Since the parties are working well together now to get Dr. Hopkins' manuscripts reviewed, I think it might make sense to hold off a little on

24-10462.369

mediation. Let's revisit after DOPSR has had a chance to work through the proposed publications they're reviewing."

11.     On 16 August 2022, the undersigned emailed Defendant's counsel, "I'm open to the idea of holding off but I'd feel much more comfortable if we asked the court to clarify whether we have to go to mediation now or if we can wait a couple months to see what shakes out."

12.     On 19 August 2022, Defendant's counsel emailed the undersigned, "I'm just suggesting that the parties work out what they can on their own first. The Court's order only said that mediation 'must be completed by 3 PM on June 15, 2023.' Since that's almost a year away, my suggestion is to wait and schedule mediation when the parties feel it would be most beneficial."

13.     On 30 September 2022, Defendant's counsel emailed the undersigned, stating that DOPSR was sending a redacted copy of the manuscript entitled *Klaxon!* with suggested amendments directly to Hopkins along with a letter stating, in pertinent part, "The amendments protect from release 'non-public information,' which can include classified national security information, controlled unclassified information, operational security information, export-controlled information, and unclassified information that may individually or in aggregate lead to the compromise of classified information." All of the redacted text was unclassified information sourced from officially released records.

14.     On 30 September 2022, the undersigned emailed Defendant's counsel, stating, "Since this is by DOPSR's own admission a cleared manuscript there is literally

zero reason that it cannot be sent to me, since everything in it has been approved for publication."

15.   On 6 October 2022, the undersigned emailed Defendant's counsel, stating, "[P]lease advise DOPSR that they need to send me a copy of this manuscript with the classified redactions clearly identified. How they choose to do this is up to their discretion, but at the end of the day I need something that shows which parts of the manuscript they are redacting because the information is allegedly classified and which parts they are redacting for other reasons."

16.   On 7 October 2022, Defendant's counsel emailed the undersigned, stating, "DOPSR has informed me that all redactions to the *Klaxon!* manuscript are for classified information. Because you already possess an unredacted copy of the manuscript, DOPSR cannot share the redacted version with you as it would have the effect of specifically revealing classified information to you."

17.   On 7 October 2022, the undersigned emailed Defendant's counsel, stating, "OK we're going to need to start mediation then. Because there's no way most, let alone all, of this information is properly classified, and if they're going to so blatantly misrepresent the situation to us informally there is zero chance we can trust them to engage in a good faith process without a mediator watching over their shoulder."

18.   On 31 January 2023, having received no response to his 7 October 2022 email, the undersigned emailed Defendant's counsel, stating, "It has been almost 4 months since I sent this email, and you have not responded. Are your clients ready to begin the mediation, or have they reconsidered their hardline position?"

24-10462.371

19.  On 1 February 2023, Defendant's counsel emailed the undersigned, stating, "As
for mediation, we never agreed on a mediator, and we think it makes sense to hold
off until review of all publications is complete."

20.  On 1 February 2023, the undersigned emailed Defendant's counsel, stating, "We
do not agree to wait to mediate until the review is over. You have already
indicated that DOPSR will not engage in a good faith discussion with us about
*Klaxon!* because they insist that every redaction is classified (when it is clearly
not) and so will not allow me to be in the room for the discussion. Before you
proposed holding off on mediation we had tentatively agreed on [the retired
judge], and I had suggested that you should approach him instead of me. So that
seems to be the next logical step. If you do not agree to begin mediation as soon
as we can agree on a mediator, then I will ask the judge to order mediation to
commence, since we have to complete it 4 months from now. There is no point in
waiting to even start discussing his first book while they work on his second one.
In the alternative, we will agree to continue to hold off on mediation if DOD
processes me for an LS[A][1] so that I can participate in the discussions with my
client. I have held LS[A]s several times in the past, most recently with CIA and
ODNI, and getting that handled should be relatively quick on their end. If they do
that, then we can start the discussions about the redactions within a couple of

---

[1] An LSA, alternatively known as Limited Security Access or Limited Security Approval, is a
determination commonly made in the Intelligence Community to allow a private attorney to
access and review specific classified information necessary to represent a particular client. An
LSA is not a full—or even an interim—security clearance, and each LSA is specific to a
particular client and a particular case, only allowing the private attorney to review the classified
information relevant to that particular matter. The corrections in brackets were due to a
scrivener's error in which the undersigned mistakenly wrote "LSI" instead of LSA.

weeks, but as long as they insist that I cannot participate in any discussions, we have no reason to wait for mediation."

21.    On 16 February 2023, having received no response to his 1 February 2023 email, the undersigned emailed Defendant's counsel to inquire as to whether Defendant would process him for an LSA and to inform her that his proposed mediator was not available but that another equally qualified retired judge was, asking if the second judge was an acceptable candidate.

22.    On 21 February 2023, Defendant's counsel emailed the undersigned, advising him that Defendant would not process him for an LSA and adding that Defendant was "not ready to proceed to mediation while DOPSR is so close to completing review of Dr. Hopkins' drafts."

23.    On 21 February 2023, the undersigned emailed Defendant's counsel to seek clarity on the meaning of "so close to completing review" and to propose that the parties divide the mediation fees 90/10 to roughly approximate a *pro rata* accounting of the respective resources of the parties.

24.    On 21 February 2023, Defendant's counsel emailed the undersigned, stating that DOPSR expected to complete its review of the manuscript entitled *Crowded Skies* "within the next couple of weeks" and that Defendant insisted on an even 50/50 split of all mediation fees.

25.    On 27 March 2023, the undersigned emailed Defendant's counsel, "[T]he entire month of March came and went and no *Crowded Skies*. I think you can agree that my client has been extraordinarily patient with DOPSR, but our patience is at an end. If we do not have a release by COB on 31 March, I will be filing a motion to

compel both immediate mediation and immediate processing of me for an LSA to
participate in the mediation."

26.    On 27 March 2023, Defendant's counsel emailed the undersigned, stating that
DOPSR was sending redacted copies of three of the five articles in controversy
with suggested amendments directly to Hopkins along with four letters stating, in
pertinent part, that one article was fully cleared for release and three articles were
cleared as amended, with no explanation given for any of the redactions. All of
the redacted text was unclassified information sourced from officially released
records.

27.    On 27 March 2023, the undersigned emailed Defendant's counsel, "As before,
please clearly identify which redactions are classified and which redactions are
unclassified and send the correspondence to me for documents where there are no
classified redactions."

28.    On 29 March 2023, Defendant's counsel emailed the undersigned, stating that
DOPSR was sending a redacted copy of the manuscript entitled *Crowded Skies*
with suggested amendments directly to Hopkins along with a letter stating, in
pertinent part, "The amendments protect from release 'non-public information,'
which can include classified national security information, controlled unclassified
information, operational security information, export-controlled information, and
unclassified information that may individually or in aggregate lead to the
compromise of classified information." All of the redacted text was unclassified
information sourced from officially released records.

7

29.    On 30 March 2023, the undersigned emailed Defendant's counsel, stating, "My
client accepts most of the amendments [to *Crowded Skies*] but contests that the
information on pp. 16-17 is properly redacted. Please provide us with a redacted
copy of those two pages with the redactions identified as either classified or
unclassified information so that we can begin the discussion."

30.    On 30 March 2023, Defendant's counsel emailed the undersigned, stating that she
refused to discuss the redactions.

31.    On 30 March 2023, the undersigned emailed Defendant's counsel, again asking,
"Please ask your client to specify which redactions are allegedly classified
information and which redactions are not. As before, if this is something they are
unwilling to do, the next step is mediation, because they cannot legally exclude
me from negotiations over unclassified material."

32.    On 20 April 2023, having received no response to his 30 March 2023 email, the
undersigned emailed Defendant's counsel to seek Defendant's position on this
Motion.

33.    On 24 April 2023, Defendant's counsel emailed the undersigned, stating, in
pertinent part, "Defendants also do not oppose mediation, as it is required by the
Court, though Defendants continue to view mediation as premature given that
DOPSR is still processing the remaining article and the recently-submitted photos
and captions for the two manuscripts.[2] Defendants do not object if you want to
contact [the second retired judge] regarding mediation, but we would explain to

---

[2] The original *Klaxon!* and *Crowded Skies* manuscripts included only text. Hopkins, through
undersigned counsel, submitted photos and the accompanying captions for these manuscripts in
January and February 2023, respectively.

him our position regarding the prematurity of mediation and as to whether the issues are suitable for mediation. We think there is still time to get any mediation completed before the June 15 deadline, and we reserve the right to advise the Court of our views on whether mediation is necessary and appropriate. However, in no event will DOJ agree to pay more than 50% of any mediation. Mediation has been ordered by the court, and there is no basis for DOJ to pay 90% of the mediation fee, as you previously suggested."

34. On 26 April 2023, the undersigned emailed Defendant's counsel a document demonstrating that pages 16-17 of the *Crowded Skies* manuscript were exclusively sourced from publicly available official releases. In this email, the undersigned also stated that Hopkins's publisher had insisted that the final *Crowded Skies* manuscript be delivered no later than 1 May. As a good faith gesture to allow DOPSR time to complete its review by this deadline without distractions, the undersigned agreed to delay filing this Motion—and any discovery requests—until after 1 May.

35. On 3 May 2023, Defendant's counsel emailed the undersigned, stating that DOPSR was sending a redacted copy of the fifth article in controversy with suggested amendments directly to Hopkins along with a letter dated 27 April 2023 stating, in pertinent part, that the article was cleared as amended, with no explanation given for any of the redactions. All of the redacted text was unclassified information sourced from officially released records. This email also stated that the *Crowded Skies* manuscript and Hopkins's rebuttal document were still being reviewed due to the alleged need to consult with another agency.

24-10462.376

As of this writing, Defendant has claimed that all of its redactions in one manuscript are classified despite all evidence to the contrary, refused to confirm if *any* redactions in three other manuscripts are classified, refused to allow Hopkins's undersigned counsel to participate in any discussions regarding the redactions, and refused to enter into mediation, even though the Court has ordered it to be *completed* approximately one month from now. Defendant appears to maintain that mediation may not be necessary or "appropriate," even though the undersigned put Defendant's counsel on notice in *October* that mediation would be necessary due to Defendant's meritless assertion that all of the redacted information in the *Klaxon!* manuscript was properly classified. After insisting that it was eager to complete mediation "as soon as practicable" last July if Hopkins agreed to one of its preferred mediators, Defendant abruptly reversed course as soon as Hopkins proposed a mediator who would have experience in matters involving classified information, and it has continued to stymie Hopkins's efforts to begin the mediation the Court ordered almost a year ago, all the while falsely claiming that it is not "refusing" to begin mediation while actually refusing to begin mediation.

Because of Defendant's continued dilatory conduct in this case and the fact that DOPSR has *still* not completed its review of his manuscripts, Hopkins regretfully requests this Court's intervention to compel Defendant to begin mediation in enough time to minimize the effect on the schedule established by the Court eleven months ago. Accordingly, Hopkins asks the Court to convene a status conference, in which he will ask not only for mediation to commence immediately, but also for an order directing Defendant to process the undersigned for an LSA to allow him to represent his client in both the mediation and the litigation (which, had Defendant agreed to enter into mediation earlier, would have been the first topic of discussion). Hopkins will also ask the Court to order Defendant to pay 90% of the mediation fees, out of recognition

10

of both Defendant's obdurate refusal to engage in timely mediation and the fact that a *pro rata* division of fees is appropriate in a case involving such an imbalance in resources as is present here.[3]

Defendant's counsel has instructed the undersigned to state the following as Defendant's position on this Motion: "Defendants do not oppose Plaintiff's motion for a status conference. Defendants intend to file a status report setting forth their views before appearing at any such conference." Hopkins opposes Defendant's request to submit arguments masquerading as a status report in advance of the status conference and maintains that any arguments can and should be made during the conference or in briefing afterwards; it is why this Motion has not included a discussion, for instance, of the case law supporting his request that the undersigned be processed for an LSA. Accordingly, Hopkins asks this Court to simply order the parties to appear at a status conference on a given date and explicitly not authorize either party to submit written materials in advance of that conference.

Because both Defendant's counsel and the undersigned live and work in the Washington, DC, area, Hopkins respectfully requests that this status conference be held as a videoconference or teleconference.

---

[3] Hopkins will likely also ask the Court to amend the remainder of the schedule, including the discovery period and the deadlines for motions and trial.

24-10462.378

TAB 8

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## Dallas Division

ROBERT HOPKINS, III,        *
                               *

     Plaintiff,           *
                               *

     v.                 *     Civil Action No. 3:22-cv-00706 (E)
                               *

DEPARTMENT OF DEFENSE,   *
                               *

     Defendant.         *
                               *

*    *    *    *    *    *    *    *    *    *    *    *    *

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AN INITIAL MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR EXPEDITED CONSIDERATION

### SUMMARY

Plaintiff Robert Hopkins, III ("Hopkins") commenced this litigation against the Defense Office of Prepublication and Security Review ("DOPSR")[1] in 2022 in part to challenge the unconstitutional prior restraint imposed upon him with respect to documents that he properly submitted for prepublication review. Per this Court's Scheduling Order dated 13 June 2023, DOPSR shall file a comprehensive motion for summary judgment on all counts no later than 11 August 2023. However, due to the extreme time-sensitivity of one count and the small amount of information in controversy, Hopkins accordingly requests leave to file an initial motion for partial summary judgment regarding the two pages' worth of information redacted from the manuscript entitled *Crowded Skies: Cold War Reconnaissance Over the Baltic* ("*Crowded Skies*") on the grounds that the information has been previously officially disclosed and is not

---

[1] DOPSR is treated herein as the "Defendant" to avoid confusion because this Motion pertains solely to redactions made by that office, even though the Department of Defense is the proper party Defendant as a matter of law.

properly classified. Hopkins requests that the Court authorize him to file this motion in addition

to the one summary judgment motion he is allowed by Local Rule 56.2(b) so that he will retain

the right to file a cross-motion for summary judgment on the remainder of the matters in

controversy after Defendant files its initial motion in August. Hopkins also requests that the

Court expedite the briefing and adjudication of his proposed motion—and, to the extent

necessary, *this* Motion—out of recognition of the fact that he only has until the end of July to

submit any modifications to his manuscript to his publisher.

The proposed motion, brief in support, and appendix have been submitted to the

Department of Defense for prepublication review, given that Defendant alleges that some of the

information Hopkins seeks to publish is classified.

## FACTUAL AND PROCEDURAL HISTORY

1.      On 6 October 2021, pursuant to his NDAs, Hopkins submitted, through

undersigned counsel, the manuscript for his book, *Crowded Skies: Cold War Reconnaissance

Over the Baltic* ("*Crowded Skies*"), to the Defense Office of Prepublication and Security Review

("DOPSR") for prepublication review, even though it was exclusively sourced from publicly

released and declassified records.

2.      On 22 March 2022, Hopkins filed the complaint in this litigation, alleging in

Count 6 that DOPSR's refusal to conduct a prepublication review of *Crowded Skies* violated his

First Amendment rights to publish unclassified information.

3.      On 20 July 2022, DOPSR agreed to begin a prepublication review of *Crowded

Skies*.

4.      On 29 March 2023, DOPSR approved *Crowded Skies* for publication with certain

redactions and conditions.

5.      DOPSR redacted a moderate amount of text from pages 16-17. These are the only redactions from *Crowded Skies* being challenged by Hopkins.

6.      On 26 April 2023, Hopkins submitted, through undersigned counsel, a detailed response to DOPSR's determination, in which he demonstrated that all of the redacted information was taken from the 2006 article "In the Right Place at the Right Time: US Signals Intelligence Relations with Scandinavia, 1945-1960" ("'In the Right Place'") published in the *Journal of Strategic Studies* by well-respected military intelligence historian Matthew Aid.

7.      Hopkins directly identified and provided each passage from "In the Right Place" which served as the source of each piece of redacted information.

8.      Hopkins also provided a list of all of the declassified and unclassified documents cited in "In the Right Place" for this information. These included numerous official foreign government publications, U.S. Government publications, and scholarly works.

9.      On 14 June 2023, DOPSR declined to retract any redactions from pages 16-17 of *Crowded Skies*.

10.     On 16 June 2023, Hopkins submitted the final approved manuscript of *Crowded Skies* to his publisher, retaining the black redaction marks.

11.     The scheduled publication date of *Crowded Skies* is 11 November 2023.

12.     Hopkins expects to be able to submit any final modifications to *Crowded Skies* until the end of July 2023 as long as they do not significantly alter the page layout.

13.     Hopkins intends to submit new versions of pages 16-17 to his publisher which include any information this Court determines to have been improperly redacted.

**ARGUMENT**

Under Local Rule 56.2(b), a party may not file more than one motion for summary judgment "[u]nless otherwise directed by the presiding judge, or permitted by law." One purpose of the rule is to "enable[] the court to regulate successive motions that are filed after the court has devoted time and effort to deciding an initial motion and has identified issues that are not subject to summary disposition, but as to which the movant seeks a second bite at the apple." *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 06- 73, 2007 U.S. Dist. LEXIS 46922, at *5 (N.D. Tex. June 27, 2007). That said, this Court "retains ultimate control," and may allow a party to file a second summary judgment motion. *Id.*; *see also Hudson v. Cleco Corp.*, 539 F. App'x 615, 617-18 (5th Cir. 2013) (affirming district court's decision to permit a successive motion for summary judgment).

"[Q]uestions of the timing and sequence of motions in the district court . . . best lie[] at the district court's discretion." *Enlow v. Tishomingo Cnty., Miss.*, 962 F.2d 501, 507 (5th Cir. 1992). The Court's discretion to permit successive summary judgment motions "may be exercised whether or not new evidence is submitted with [a] subsequent motion." *Johnson v. PPI Tech. Servs., L.P.*, 605 F. App'x 366, 367-68 (5th Cir. 2015).

Here, Hopkins moves for partial summary judgment under Rule 56 to address one count involving a small amount of redacted information that he needs to be able to provide to his publisher within six weeks or lose the opportunity to publish it at all. He will therefore suffer a concrete and irreparable harm if this dispute is not resolved in an expedited fashion. Since this motion involves only a factual dispute regarding one count, there will be little to no impact to future disputes in this case. and Hopkins therefore requests that the Court allow him to preserve his right to file a second motion for summary judgment that would address issues not covered in

this initial motion. Adjudicating a second summary judgment motion would "not unduly burden the court and the parties" but "may in fact save the time and expense of an unnecessary trial." *See Home Depot*, 2007 U.S. Dist. LEXIS 46922, at *6-7. Hopkins should not have to forfeit the opportunity to dispose of the case with a merits-based summary-judgment motion simply because he needs some information in controversy more urgently than the rest.

Additionally, for the good cause shown above, Hopkins requests that the Court expedite the briefing and adjudication of both his proposed motion for partial summary judgment, as follows:

1.   Order DOPSR to complete its prepublication review of Hopkins's proposed motion, brief, and appendix, and return all three filings to Hopkins's undersigned counsel no later than 30 June;

2.   If DOPSR makes any redactions to any of Hopkins's filings, order it to provide unredacted copies of the filings to the Court for its *in camera* review no later than 3 July;

3.   Order Hopkins to file the cleared versions of Hopkins's filings within one business day of receipt from DOPSR;

4.   Order DOPSR to file any opposition to Hopkins's motion for partial summary judgment within four business days of the filing of Hopkins's motion;

5.   Order Hopkins to file any reply within four business days of the filing of Defendant's opposition; and

6.   Issue a final order regarding Hopkins's motion for partial summary judgment as soon as practicable, but no later than 24 July.

24-10462.456

Defendant maintains that the Court precluded the filing of either this Motion or a partial summary judgment motion in its 13 June 2023 Scheduling Order, and that Hopkins must first request reconsideration of that Order. Hopkins respectfully disagrees with this reading and maintains that the 13 June Order speaks only to the filing of a summary judgment motion *by Defendant* and cannot be read to silently prevent Hopkins from filing a summary judgment motion of his own at the time of his choosing, as is his right under the Federal Rules of Civil Procedure and this Court's Local Rules.

Defendant opposes this Motion. A proposed Order has been included with this Motion.

Date:    June 24, 2023

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
N.D. Tex. Bar #984704DC
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

TAB 9

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (E) |
| | * | |
| DEPARTMENT OF DEFENSE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## PLAINTIFF'S CORRECTED PARTIALLY UNOPPOSED MOTION TO STAY BRIEFING OF DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT[1]

NOW COMES Plaintiff to respectfully ask the Court to stay the briefing of Defendants' Motion to Dismiss and for Summary Judgment, Dkt. #32, until it resolves Plaintiff's forthcoming two procedural motions: one to unseal part of Defendant's appendix and one to authorize access by the undersigned to the response Plaintiff submitted directly to Defendant on 24 July 2023 demonstrating that the information being censored by Defendant in this case was previously officially declassified and/or disclosed. A district court's decision to stay a

---

[1] This Motion has been corrected to clarify Defendant's position, which Defendant's counsel has argued is more nuanced than represented in Dkt. #35. Because this clarification has transformed this Motion from an unopposed motion to a partially unopposed motion, the Motion has been accordingly modified to comply with Local Rule 7.1(b)(2).

proceeding is reviewed on appeal for abuse of discretion. *Plaquemines Par. v. Chevron United States, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023).

## I.     ARGUMENT

Plaintiff has good cause to request this extension. For the reasons which will be set forth in the forthcoming motion to unseal, Plaintiff maintains that certain information in the purportedly classified appendix directly relevant to his case in chief is not classified or even classifiable, and that Defendant is accordingly required to file it on the public record. For the reasons which will be set forth in the forthcoming motion for access, Plaintiff maintains that his undersigned attorney is entitled to see the evidence he has provided to Defendant proving that the information being censored in this case has been officially declassified or was not classified in the first place, so that his undersigned attorney can accordingly use that evidence to prove as much to the Court. It is therefore in the interest of judicial economy and fairness to resolve these forthcoming motions—the first of which will be filed on 5 January 2024 and the second of which will likely be filed soon thereafter—before requiring Plaintiff to attempt to write a brief which would by definition be fundamentally altered by the granting of either motion. Plaintiff accordingly asks that the Court stay this briefing and order that Plaintiff's opposition to Defendants' motion and any accompanying cross-motion be filed no later than two weeks from the date it resolves the intervening motions.

2

## II.    CERTIFICATE OF CONFERENCE

The undersigned and Defendant's counsel Lisa Newman conferred regarding this Motion on 4 December 2024 and the results were as follows: Defendant does not oppose this Motion insofar as it asks the Court to stay the briefing while the Court resolves the forthcoming motion to unseal but does oppose this Motion insofar as it asks the Court to stay the briefing while the Court resolves the forthcoming motion for access. The parties were unable to reach agreement due to Defendant's contention that Plaintiff's forthcoming motion for access lacks merit. However, since both motions are anticipated to be filed in close proximity to one another, and since the logic of staying the briefing while resolving one motion equally applies to staying the briefing while resolving both motions, this is in Plaintiff's view a distinction without a difference. Since Defendant's opposition is premised entirely on its contention that the forthcoming motion for access should be denied, it should not be heard to complain that it will be prejudiced by giving the Court an opportunity to potentially agree with it before briefing resumes.

## III.    CONCLUSION

The Court should grant this Motion and stay all briefing on Defendant's motion until the two forthcoming motions have been adjudicated. A proposed Order has been included with this Motion.

24-10462.917

TAB 10

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

### Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (E) |
| | * | |
| DEPARTMENT OF DEFENSE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

### <u>DECLARATION OF ROBERT HOPKINS, III</u>

I, Robert Hopkins, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge.

2.      I have written about military history for several decades and published my first book in 1997. A list of my creative works is attached to this declaration.

3.      On July 21, 2023, I submitted a document to the Defense Office of Prepublication and Security Review ("DOPSR"), intending to provide the document to my lawyer to assist his efforts to oppose the Government's motion for summary judgment once DOPSR had cleared it for release.

4.      The document was a mostly comprehensive response addressing almost all of DOD's redactions from the various manuscripts included in this case.

5.      The document followed a simple pattern. First I would indicate the piece of information DOPSR had redacted from a manuscript. Then I would attach an image of the

relevant portion of the unclassified and/or officially released document from which I sourced the information. Then I would give a full citation to the source document.

6.      For example, if I had written the sentence "The case was first assigned to Judge Cummings before it was reassigned twice: once to Judge Fitzwater and finally to Judge Brown" on page 25 of one of my manuscripts, and DOPSR had redacted the names of the judges assigned to the case, the relevant section of my response document would have looked like this:

**P. 25 Judges' Names**

This case was originally before United States District Court Senior Judge Sam R. Cummings. On June 2, 2023, this case was reassigned to United States District Court Senior Judge Sidney A Fitzwater pursuant to Special Order 3-348. (Doc. 19). On June 6, 2023, this case then reassigned to United States District Court Judge Ada E. Brown pursuant to Special Order 3-249. (Doc. 21).

6/13/23 Order, Hopkins v. DOD, No. 3:22-CV-00706-E (N.D. Tex.)

7.      Virtually everything in my response document was either a summary of redacted material from a manuscript or a pasted image from an unclassified publicly available source and a citation to that source.

8.      This means that if one were to redact all the manuscript summaries from my response document, the only substantive information that would be left would be images of unclassified, publicly available documents and the corresponding citations.

9.      On October 23, 2023, DOPSR informed me that I was prohibited from providing anything in my response document to my lawyer.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:   February 7, 2024

Robert Hopkins, III

24-10462.980

TAB 11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of August, 2024, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail on Appellee's counsel of record.

Date: August 11, 2024

Respectfully submitted,


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*