No. 24-10462

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

ROBERT HOPKINS, III,

*Plaintiff-Appellant*,

v.

DEPARTMENT OF DEFENSE,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
No. 3:22-cv-00706 (Ada E. Brown, J.)

_____

**BRIEF FOR PLAINTIFF-APPELLANT**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ROBERT HOPKINS, III,    *
                        *
    Appellant,          *
                        *
    v.                  *
                        *    Case No. 24-10462
DEPARTMENT OF DEFENSE,  *
                        *
    Appellee.           *
                        *
*   *   *   *   *   *   *   *   *   *   *   *   *

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Robert Hopkins, III

- Kelly McClanahan

- National Security Counselors, Inc.

 /s/ Kelly B. McClanahan  
Kelly B. McClanahan, Esq.

*Counsel for Appellant*

i

## **ORAL ARGUMENT STATEMENT**

Appellant maintains that oral argument would be helpful because of the degree to which the District Court based its entire decision on the faulty premise that Hopkins failed to prosecute his case, which led hydraulically to its conclusion that it lacked subject-matter jurisdiction over the case because it had not heard any arguments to the contrary. As such, Appellant maintains that the Court would benefit from being able to ask questions of Appellant's counsel about specific parts of the record, which he will then be able to place in the proper context. However, Appellant leaves the matter to the Panel's sound discretion.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................. i

ORAL ARGUMENT STATEMENT ............................................................. ii

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF ISSUES ......................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

    The Prepublication Review Regime ....................................................... 3

    Hopkins's Previous Publications ........................................................... 6

    Processing of Manuscripts Prior to the Sturgis Email............................ 7

        *Klaxon!* ........................................................................................ 7

        *Crowded Skies* .............................................................................. 9

        "Searching for Mobile ICBMs" ..................................................... 10

        "Bring Back the Looking Glass"..................................................... 11

        "Why 15 Minutes Is Irrelevant" ..................................................... 12

    Administrative Closure and Reprocessing ........................................... 12

    Hopkins's Early Attempts to Prosecute This Case................................ 17

    From Hopkins's Stay Motion to Dismissal ........................................... 20

SUMMARY OF ARGUMENT ......................................................... 23

ARGUMENT .................................................................................. 23

    I.    STANDARD OF REVIEW ......................................... 23

    II.   DISMISSAL WITH PREJUDICE WAS UNWARRANTED..... 23

    III.  THE OTHER RULINGS WERE ALSO ABUSES OF
        DISCRETION ............................................................. 30

CONCLUSION .............................................................................. 30

CERTIFICATE OF SERVICE ........................................................ 32

CERTIFICATE OF COMPLIANCE................................................ 33

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                           **Pages**

*Berry v. CIGNARSI-CIGNA*, 975 F.2d 1188 (5th Cir. 1992) ....... ......... ......... 24, 25, 26, 27, 28

*Dean v. Seidel*, 18 F.4th 842 (5th Cir. 2021) ......... ......... ......... ......... ......... 24

*Foman v. Davis*, 371 U.S. 178 (1962) ......... ......... ......... ......... ......... ......... 28

*Morris v. Ocean Systems*, 730 F.2d 248 (5th Cir. 1984) ... ......... ......... ......... 25

**Statutes and Rules:**

5 U.S.C. § 701 ...... ......... ......... ......... ......... ......... ......... ……..…… ..... ......... 1

28 U.S.C. § 1331 .. ......... ......... ......... ......... ......... ......... ......... ......... ......... 1

28 U.S.C. § 2201 .. ......... ......... ......... ......... ......... ......... ......... ......... ......... 1

Fed. R. Civ. P. 12(b) ....... ......... ......... ......... ......... ......... ......... ......... 29

## JURISDICTIONAL STATEMENT

Appellant Robert Hopkins, III ("Hopkins") invoked the District Court's jurisdiction against the Department of Defense ("DOD") under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the First Amendment to the Constitution of the United States, and 28 U.S.C. § 1331. ROA.9.

On 25 March 2024, the Honorable Ada E. Brown ("the District Court") issued a Final Judgment dismissing the case. ROA.1023. Hopkins noticed an appeal against DOD on 24 May 2024. ROA.1036.

## STATEMENT OF ISSUES

1.      Whether the District Court erred as a matter of law in denying Hopkins's motion to stay the briefing?

2.      Whether the District Court erred as a matter of fact and law in concluding that Hopkins had abandoned his claims?

3.      Whether the District Court erred as a matter of law in concluding that it lacked subject-matter jurisdiction over Hopkins's claims?

4.      Whether the District Court erred as a matter of law in dismissing Hopkins's case with prejudice?

5.      Whether the District Court erred as a matter of law in dismissing Hopkins's motion to unseal and motion for access as moot?

6.      Whether the District Court erred as a matter of fact and law in denying Hopkins's motion for reconsideration of its final judgment?

## STATEMENT OF THE CASE

Hopkins brought this case against DOD after it failed to properly process his requests for prepublication review of several manuscripts. The District Court erred by denying Hopkins's reasonable motion to stay briefing and simultaneously concluding that, because that stay motion had been denied, Hopkins had abandoned his claims because he had not filed an opposition brief to a motion to dismiss and for summary judgment. ROA.1012, 1016. The District Court further erred by holding that it lacked subject-matter jurisdiction over the case without receiving argument from Hopkins. ROA.1020-1021. The District Court further erred by holding that Hopkins's motions to partially unseal information in the Classified Appendix and to grant his undersigned counsel access to his intended evidence were moot in light of the denial of the case. ROA.1012. The District Court finally erred by denying Hopkins's unopposed motion for reconsideration of its final judgment. ROA.1034.

## FACTUAL AND PROCEDURAL BACKGROUND

Despite the fact that the legal questions at issue in this appeal are fairly simple and straightforward, they cannot be easily analyzed without first discussing the convoluted history of the dispute between Hopkins—the author attempting to

publish several manuscripts—and DOD—the agency determined to stand in his way. While Hopkins apologizes in advance for the lengthy recitation of the background of this case, he trusts the Court will understand its relevance in the context of this appeal. This is a story of an author who made every possible effort to successfully prosecute his case, an agency that made every possible effort to obstruct him, and a District Court that avoided all of the thorny questions raised by the case and held that the author had abandoned his claims despite all his efforts.

### *The Prepublication Review Regime*

1.      Any person who possesses a security clearance to access classified national security information must sign a Non-Disclosure Agreement agreeing, *inter alia*, to submit any documents related to his/her national security employment for prepublication review before publishing them. ROA.1006.

2.      An author generally submits a document to the agency which sponsors (or sponsored) his/her security clearance. ROA.1007.

3.      Each agency generally has a specific office responsible for conducting prepublication review, although prepublication review is often not the sole responsibility of such an office. ROA.1007.

4.      The Defense Office of Prepublication and Security Review ("DOPSR") is responsible for coordinating prepublication review across DOD, but it does not perform any review itself, and the Air Force Office of Public Affairs

("SAF/PA") is responsible for coordinating prepublication review for the United States Air Force. ROA.1007.

5. The standard operating procedure for current and former Air Force personnel is to submit manuscripts to SAF/PA, which will usually complete its prepublication review within approximately two weeks. ROA.1007.

6. If SAF/PA determines that the manuscript requires coordination with other DOD components or other agencies, it may refer the manuscript to DOPSR after completing its review. Otherwise it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. ROA.1007.

7. SAF/PA will also refer a manuscript to DOPSR if it: "a. Originates or is proposed for release in the National Capital Region by senior personnel (e.g., general or flag officers and Senior Executive Service) on sensitive political or military topics; b. Is or has the potential to become an item of national or international interest; c. Affects national security policy, foreign relations, or ongoing negotiations; d. Concerns a subject of potential controversy among the DoD Components or with other federal agencies; e. Is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson; or f. Contains technical data." ROA.101. These criteria will be referred to herein as the "3-1 Criteria" to indicate that the criteria appear in

Enclosure 3, Section 1, DOD Instruction 5230.29, *Security and Policy Review of DoD Information for Public Release*.

8.    If an author knows in advance that a manuscript will require coordination with several DOD components or meets one of the 3-1 Criteria, the author may submit the manuscript directly to DOPSR. DOPSR will not complete its prepublication review in fewer than sixty days, and it maintains that it is not required to complete its review within any set time limit. ROA.1007.

9.    After DOPSR completes its coordination with any DOD components that it deems relevant to a manuscript, it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. ROA.1007.

10.    Manuscript submissions to SAF/PA must be accompanied by a standardized form. Manuscript submissions to DOPSR must be accompanied by a cover letter, although there is no standardized format. ROA.1007.

11.    It is not uncommon for authors to be represented by counsel during the prepublication review process, both in DOD and across the Executive Branch. It is common for such counsel to submit their clients' manuscripts for prepublication review and correspond with the respective prepublication review offices on their clients' behalf, especially if the client has no reason to believe the manuscript contains any classified information. ROA.1008.

12.     Hopkins's undersigned counsel and other private attorneys who represent authors have submitted clients' manuscripts for prepublication review to various agencies and represented those clients in the prepublication review process without objections from the agencies. ROA.1008.

### *Hopkins's Previous Publications*

13.     At the time of his honorable discharge in 1991 from the United States Air Force, Hopkins had a Top Secret security clearance with access to Sensitive Compartmented Information. ROA.1008.

14.     Between 2016-18, Hopkins published two books, only one of which he submitted for prepublication review because Air Force official guidance stated that "former members and retired personnel" are "encouraged" but not required to submit manuscripts for prepublication review. ROA.13-14 (quoting Secretary of the Air Force Office of Public Affairs Security Review, *Air Force Security Review Handbook* 2 (2019), *available at*

https://www.barksdale.af.mil/Portals/52/Units/Public_Affairs/AFD-090309-109.pdf (last accessed Aug. 7, 2024)).

15.     In late 2018 or early 2019, an unknown person falsely reported to the Air Force Office of Special Investigations ("OSI") that Hopkins had included classified information in the then-unpublished manuscript of his third book,

*Strategic Air Command in the UK: SAC Operations 1946-1992* ("*SAC in the UK*").
ROA.14.

16.     After being cleared of any wrongdoing by OSI and being reassured by

an Air Force Judge Advocate General officer that he was not obligated to submit

his manuscripts for prepublication review if he used only public domain material,

Hopkins nonetheless voluntarily submitted, through his undersigned counsel, the

*SAC in the UK* manuscript to SAF/PA for prepublication review. ROA.11, 14.

17.     After a nine-day review process in which SAF/PA corresponded with

Hopkins's undersigned counsel without objection, SAF/PA informed Hopkins's

undersigned counsel that *SAC in the UK* had been cleared for public release, and

Hopkins published the book on 16 December 2019. ROA.14-15.

### *Processing of Manuscripts Prior to the Sturgis Email*

### *Klaxon!*

18.     On 14 December 2020, Hopkins personally submitted the manuscript

for his fourth book, *Klaxon! Strategic Air Command Alert During the Cold War*

("*Klaxon!*"), to SAF/PA for prepublication review, even though it was, like his

other manuscripts, exclusively sourced from publicly released and declassified

records. ROA.15.

19.     *Klaxon!* did not require coordination with other DOD components or

meet any of the 3-1 Criteria. ROA.15.

20.     On 8 July 2021, after Hopkins had received no response from SAF/PA, his undersigned counsel contacted SAF/PA regarding the matter. ROA.15-16.

21.     SAF/PA advised Hopkins's undersigned counsel that "due to the content of his manuscript, it will also need to be reviewed by [DOPSR]." ROA.16.

22.     Over the course of several emails, SAF/PA stated that it would not reconsider its determination that a referral to DOPSR was appropriate. ROA.16. At no point did SAF/PA object to corresponding with the undersigned about the matter instead of Hopkins. ROA.16.

23.     On 26 July 2021, SAF/PA completed its review of *Klaxon!* and referred the manuscript to DOPSR, which then referred it to three other DOD components. ROA.568.

24.     Between July 2021 and January 2022, Hopkins's undersigned counsel unsuccessfully attempted numerous times to resolve the review of *Klaxon!* with DOPSR. After initially advising him of the referral to the other three DOD components, DOPSR declined to respond to any of his subsequent emails until 28 February 2022, when DOPSR Chief George Sturgis ("Sturgis") sent Hopkins's undersigned counsel the email discussed in the next section ("Sturgis Email"). ROA.16-17.

***Crowded Skies***

25.     On 6 October 2021, Hopkins submitted, through his undersigned

counsel, the manuscript for his fifth book, *Crowded Skies: Cold War*

*Reconnaissance Over the Baltic* ("*Crowded Skies*"), directly to DOPSR for

prepublication review, even though it was, like his other manuscripts, exclusively

sourced from publicly released and declassified records. Hopkins submitted

*Crowded Skies* to DOPSR instead of SAF/PA because he knew it contained U.S.

Navy equities. ROA.19.

26.     On 18 October 2021, DOPSR replied to Hopkins's undersigned

counsel, acknowledging receipt of the *Crowded Skies* submission. DOPSR stated,

in pertinent part, "DOPSR does not . . . work with an author's legal counsel or

literary representative. Please have the author contact us directly with appropriate

contact information, and we will provide him/her with an acknowledgement of the

manuscript. Failure to provide this information will result in the denial of Security

Review of this manuscript and administrative closure of this case." ROA.856.

27.     On 23 November 2021, DOPSR emailed Hopkins's undersigned

counsel, informing him that DOPSR was "closing the case and taking no further

action" because he had not provided Hopkins's contact information. ROA.20.

28.     On 14 January 2022, Hopkins's undersigned counsel emailed DOPSR,

stating, in pertinent part, "I . . . expect that DOPSR will reverse its denial of my

client's 6 October 2021 submission, *Crowded Skies*, . . . and process it for release expeditiously, in light of the fact that your denial of that submission was exclusively based on the fact that I submitted the unclassified manuscript to DOPSR." ROA.568.

29.     On 14 January 2022, DOPSR replied to Hopkins's undersigned counsel, advising him that he needed to submit a cover letter which included contact information, a date Hopkins would like the review complete, and a statement that attests that to the best of his knowledge, the manuscript does not contain classified information. DOPSR specified, "Usually, you would use your office letterhead when submitt[ing] on anothers [sic] behalf. Any format is ok, we just need it for our records." ROA.21. These criteria will be referred to herein as the "West Criteria" to indicate that they were stated by DOPSR official Tim West.

30.     On 14 January 2022, Hopkins's undersigned counsel emailed the requested cover letter to DOPSR. DOPSR's next response was the Sturgis Email discussed in the next section. ROA.21-22.

### "Searching for Mobile ICBMs"

31.     On 6 January 2022, Hopkins submitted, through his undersigned counsel, a six-page blog article entitled "Searching for Mobile ICBMs" to SAF/PA for prepublication review, even though it was, like his other manuscripts, exclusively sourced from publicly released and declassified records. ROA.18.

32.    "Searching for Mobile ICBMs" did not require coordination with other DOD components or meet any of the 3-1 Criteria. ROA.18.

33.    On 21 January 2022, in response to a follow-up email, SAF/PA emailed Hopkins's undersigned counsel, informing him that the article had been forwarded to DOPSR. SAF/PA then directed Hopkins's undersigned counsel to "please forward al of Mr. [sic] Hopkins' submission requests directly to DOPSR for security and policy review processing." ROA.18.

34.    DOPSR did not provide any information to Hopkins or his undersigned counsel about "Searching for Mobile ICBMs" prior to the filing of this case. ROA.19.

### "Bring Back the Looking Glass"

35.    On 14 January 2022, Hopkins submitted, through his undersigned counsel, two[1] articles to DOPSR for prepublication review, even though they were, like his other manuscripts, exclusively sourced from publicly released and declassified records. ROA.23-25. The first of these submissions was a four-page article entitled "Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?" ("'Bring Back the Looking Glass'"). ROA.23.

---

[1] Because DOPSR did ultimately approve two of the articles submitted on 14 January 2022 for publication after Hopkins filed this lawsuit, Hopkins agrees that Counts 8 and 10 are moot and will not discuss those articles further.

36.    Hopkins's undersigned counsel then emailed a cover letter for "Bring Back the Looking Glass" to DOPSR which addressed the West Criteria. ROA.23.

37.    DOPSR did not provide any information to Hopkins or his undersigned counsel about "Bring Back the Looking Glass" prior to the filing of this case. ROA.24.

### "Why 15 Minutes Is Irrelevant"

38.    The second 14 January 2022 submission was a six-page article entitled "Why 15 Minutes Is Irrelevant." ROA.24.

39.    Hopkins's undersigned counsel then emailed a cover letter for "Why 15 Minutes Is Irrelevant" to DOPSR which addressed the West Criteria. ROA.24-25.

40.    DOPSR did not provide any information to Hopkins or his undersigned counsel about "Why 15 Minutes Is Irrelevant" prior to the filing of this case. ROA.25.

### _Administrative Closure and Reprocessing_

41.    On 28 February 2022, Sturgis emailed Hopkins's undersigned counsel, stating that DOPSR's insistence on only corresponding with authors and only accepting submissions directly from authors is "standard DoD policy" and that DOPSR was closing all of Hopkins's submissions until he contacted DOPSR directly. ROA.863.

42.    DOPSR then administratively closed all of Hopkins's submissions. ROA.571. DOPSR claims that it made this decision because "DOPSR does not discuss classified information with individuals who are not cleared to receive it." ROA.571.

43.    At no point did DOPSR claim that all of the submissions contained classified information; in fact, DOPSR administratively closed the four 14 January 2022 submissions before even reviewing them, and it ultimately approved two of them for release in their entirety, conclusively demonstrating that they contained no classified information. ROA.511.

44.    DOPSR similarly failed to establish that it only redacted classified information once it did process the manuscripts. For example, DOD redacted the words "15 Minutes" from the title of "Why 15 Minutes Is Irrelevant"[2] despite referring to the title in its entirety no less than *eight times* in its filings, ROA.81, 509, 510, 511, 514, 567, 569, 897, including one mention in which it was explicitly marked "(U)" for Unclassified. ROA.897. DOPSR only lifted the redaction of these words on 19 October 2023, despite first including them in a public filing

---

[2] Hopkins cannot provide a citation supporting this statement in the record because the redacted manuscript was not included in the appendix filed by DOD on the public record. However, that manuscript with "'see-through' redactions" is available to the Court in the Classified Appendix. ROA.902. Given that DOD filed its Classified Appendix on 4 October 2023, ROA.902, but DOPSR did not lift the redaction until two weeks later, Hopkins does not know if this redaction—or in fact any redactions lifted on 19 October 2023—are reflected in the Classified Appendix.

sixteen months earlier, ROA.81, which was filed seven months before DOPSR

informed Hopkins that it could not be published.[3]

45.    DOPSR similarly argued, during this case, that it does *not*

"administratively close all requests for review submitted by an attorney on behalf

of a client author," ROA.571, which cannot be reconciled with its statement that it

"does not discuss classified information with individuals who are not cleared to

receive it," ROA.571, since private attorneys do not, with a few rare exceptions,

have security clearances.

46.    On 27 March 2022, Hopkins filed the Complaint in this case. ROA.2.

47.    On 7 June 2022, DOD filed the Answer in this case. ROA.3.

48.    On 13 June 2022, the District Court (Judge Sam R. Cummings)

ordered the parties to take the case to mediation and to complete mediation by 15

June 2023. ROA.364.

49.    Between July 2022 and April 2023, Hopkins's undersigned counsel

attempted to begin mediation as ordered by the District Court, but DOD refused to

participate, after initially stating that "Defendants would like to complete

mediation as soon as practicable." ROA.368-376.

---

[3] As discussed below, this discrepancy is relevant because DOPSR is allowed to redact certain types of unclassified information during a security review, ROA.101, but the presence of such information in a document does not support DOPSR's position that it cannot be discussed with an author's counsel, since it only relies on claims about classified information to support that position, *see* ROA.571.

50.     On 20 July 2022, DOPSR agreed to begin prepublication review of all of Hopkins's manuscripts. ROA.453.

51.     Between September 2022 and September 2023, DOPSR issued determinations regarding all of Hopkins's manuscripts, as described below.

52.     *Klaxon!*: On 30 September 2022, DOPSR completed its processing of the body text of the manuscript and redacted a significant amount of information.[4] On 31 January 2023, Hopkins, through his undersigned counsel, submitted photos and captions to DOD's counsel to be forwarded to DOPSR, without objection. On 21 July 2023, Hopkins submitted a draft response intended to assist his undersigned counsel in prosecuting this case ("Draft Response") directly to DOPSR for prepublication review, which included a rebuttal of the *Klaxon!* redactions. ROA.978. On 9 August 2023, DOPSR completed its processing of the photos and captions and redacted a significant amount of information. On 29 September 2023, DOPSR lifted the redaction of thirteen words. On 19 October 2023, DOPSR lifted the redaction of two sentences.

---

[4] Hopkins cannot provide a citation supporting the date of most of DOPSR's final determinations in the record or the exact redactions because that information was not included in the appendix filed by DOD on the public record. However, it is uncontroverted that DOPSR completed most of its review of all of Hopkins's manuscripts prior to 4 October 2023, ROA.571, and that information was initially redacted from all but one. ROA.382. The determinations made on 19 October 2023 are not in the record because the District Court dismissed the case before Hopkins filed his opposition to dismissal and summary judgment.

53.     "Bring Back the Looking Glass": On 27 March 2023, DOPSR completed its processing and redacted a significant amount of information. On 19 October 2023, DOPSR lifted the redaction of two words.

54.     "Why 15 Minutes Is Irrelevant": On 27 March 2023, DOPSR completed its processing and redacted a significant amount of information. On 19 October 2023, DOPSR lifted the redaction of a moderate amount of information.

55.     *Crowded Skies*: On 21 February 2023, Hopkins, through his undersigned counsel, submitted photos and captions to DOD's counsel to be forwarded to DOPSR, without objection. On 29 March 2023, DOPSR completed its processing of the body text of the manuscript and redacted a significant amount of information. ROA.453. On 26 April 2023, Hopkins, through his undersigned counsel, submitted a rebuttal regarding two pages to DOPSR while accepting the other redactions, without objection. ROA.454. This rebuttal specifically identified the article from which all the redacted information was taken[5] and all of the declassified and unclassified documents cited in that article. ROA.454. On 14 June 2023, DOPSR responded to Hopkins's rebuttal and refused to lift any redactions from the two pages in question, ROA.454, while it cleared the photos and captions for public release in their entirety. On 21 July 2023, Hopkins submitted the Draft

---

[5] Hopkins described the article as "the 2006 article 'In the Right Place at the Right Time: US Signals Intelligence Relations with Scandinavia, 1945-1960' . . . published in the *Journal of Strategic Studies* by well-respected military intelligence historian Matthew Aid." ROA.454.

Response to DOPSR for prepublication review, which included a further rebuttal of the *Crowded Skies* redactions. On 7 August 2023, DOPSR rescinded its previous approval of *Crowded Skies* and began processing it a third time. On 26 September 2023, DOPSR completed its reprocessing and redacted additional information.

56.    "Searching for Mobile ICBMs": On 3 May 2023, DOPSR completed its processing and redacted a significant amount of information. On 19 October 2023, DOPSR lifted the redaction of three words.

### *Hopkins's Early Attempts to Prosecute This Case*

57.    After attempting to initiate mediation or otherwise facilitate the resolution of this case for nine months, Hopkins requested a status conference on 9 May 2023 "in which he will ask not only for mediation to commence immediately, but also for an order directing Defendant to process the undersigned for an LSA[6] to allow him to represent his client in both the mediation and the litigation (which, had Defendant agreed to enter into mediation earlier, would have been the first topic of discussion." ROA.377.

---

[6] An LSA, alternatively known as Limited Security Access or Limited Security Approval, is a determination commonly made in the Intelligence Community to allow a private attorney to access and review specific classified information necessary to represent a particular client. An LSA is not a full—or even an interim—security clearance, and each LSA is specific to a particular client and a particular case, only allowing the private attorney to review the classified information relevant to that particular matter. ROA.372.

58.    On 12 May 2023, DOD asked the District Court to waive or postpone mediation, claiming that it was "premature" and "not appropriate," ROA.384-385, while simultaneously continuing to claim that it "never stated . . . that [it was] unwilling to engage in mediation." ROA.383.

59.    On 12 May 2023, Hopkins also served DOD with deposition notices, ROA.387, and then asked the District Court three days later to stay all pending deadlines—while still allowing mediation and discovery—while the parties resolved the mediation, access, and discovery issues. ROA.388-389.

60.    On 24 May 2023, DOD asked the District Court to "stay all discovery, mediation, and other deadlines, including Defendant's deadline to respond to any motion to compel filed by Plaintiff, pending a decision by the Court on Defendant's forthcoming motion for summary judgment." ROA.394. At the same time, it requested that its deadline for filing the forthcoming motion for summary judgment be extended until 11 August 2023. ROA.394-395.

61.    On 6 June 2023, after being briefly reassigned to Judge Sidney A. Fitzwater, this case was reassigned to Judge Ada E. Brown. ROA.450.

62.    On 13 June 2023, despite Hopkins's detailed response refuting the allegations in DOD's stay motion, ROA.408-432, the District Court stayed all deadlines "pending the Court's adjudication of Defendant's forthcoming motion for summary judgment," which was now due 11 August 2023. ROA.450-451.

63.    On 24 June 2023, Hopkins requested leave to file his own motion for partial summary judgment solely pertaining to *Crowded Skies*, for which his deadline for submitting final edits to the publisher was quickly approaching. ROA.452-456. He advised the District Court that he had already submitted the proposed motion, brief, and appendix to DOPSR for prepublication review. ROA.453.

64.    After DOD objected to Hopkins's motion for leave, the District Court denied the motion, effectively prohibiting Hopkins from prosecuting the part of the case he already had enough evidence to win until after it adjudicated the motion that DOD wanted to file in August. ROA.5.

65.    On 21 July 2023, as noted above, Hopkins submitted the Draft Response directly to DOPSR for prepublication review, with the intention of providing it to his undersigned counsel.

66.    On 7 August 2023, DOD requested a further extension of its filing deadline until 4 October 2023, ROA.471, supported by an *ex parte*, *in camera* declaration lodged without leave of the District Court, ROA.478, which the District Court granted, ROA.487, over Hopkins's detailed objection, ROA.481-484.

67.     On 4 October 2023, DOD filed its motion to dismiss and for summary judgment and lodged a separate allegedly Classified Appendix *ex parte* and *in camera*. ROA.488, 902.

68.     On 23 October 2023, two days before Hopkins's opposition brief was due, DOPSR denied Hopkins's request to provide the Draft Response to his undersigned counsel. ROA.979.

69.     Hopkins immediately filed an unopposed motion requesting that his opposition deadline be extended until 5 January 2024. ROA.906.

### *From Hopkins's Stay Motion to Dismissal*

70.     On 3 January 2024, after attempting to resolve an issue with DOD regarding information that Hopkins believed should be included in the public appendix, Hopkins filed a partially unopposed[7] motion to stay the briefing pending resolution of a motion to unseal the information in question and another motion regarding his undersigned counsel's access to the Draft Response. ROA.915-917.

71.     On 5 January 2024, Hopkins filed his motion to partially unseal the following information from the Classified Appendix: "portion marks and other

---

[7] The motion was styled as "partially opposed" because DOD did not oppose staying briefing pending resolution of the motion to unseal, but did oppose staying briefing pending resolution of the motion for access. ROA.917.

20

classification markings for all three declarations; and the 'table identifying which components applied which redactions.'"[8] ROA.920-921 (quoting ROA.902).

72.     On 24 January 2024, DOD filed a single brief opposing both staying the briefing—despite previously stating that Hopkins's motion was unopposed in part—and unsealing any part of the Classified Appendix. ROA.932. DOD even stated at the time that it did not oppose "a reasonable extension . . . in light of Defendant's changed position on the stay motion." ROA.935.

73.     In this brief, DOD also stated its commitment to "provide the [Draft Response] to the Court in a classified appendix accompanying Defendant's summary judgment reply brief." ROA.939. It later reiterated this commitment on 4 March 2024. ROA.989.

74.     On 7 February 2024, Hopkins responded to DOD's opposition to his stay motion, using emails exchanged between his undersigned counsel and DOD's counsel to illustrate the degree to which DOD was misrepresenting the facts surrounding that motion. ROA.943-946.

75.     On 7 February 2024, Hopkins also aggressively defended his motion to unseal, filing a seven-page reply brief refuting all of DOD's arguments. ROA.947-953.

---

[8] The District Court erroneously characterized this as "a motion to unseal the DOD's motion to dismiss for lack of jurisdiction or for summary judgment," ROA.1012, even though Hopkins only requested that "two categories of information" from the Classified Appendix be unsealed. ROA.920.

76.    Five days later, on 12 February 2024, Hopkins filed his motion requesting that his undersigned counsel be allowed to access the Draft Response. ROA.955-957. He supported this motion with a sixteen-page detailed brief. ROA.961-976.

77.    In support of this motion, Hopkins filed a sworn declaration describing in as much detail as was possible on the public record the nature of the Draft Response and why it could not be properly classified in its entirety because the majority of it was screenshots of unclassified, declassified, or otherwise publicly available information from other publications. ROA.978-979.

78.    On 4 March 2024, DOD opposed Hopkins's motion for access, stating that "[t]he Court should deny Dr. Hopkins's latest motion and set a deadline by which he must respond to the Department's motion for summary judgment." ROA.983.

79.    On 12 March 2024, Hopkins filed a consent motion for a one-week extension of his reply deadline, ROA.994, which the Court granted the next day. ROA.7.

80.    At 10:52 PM on 25 March 2024, Hopkins filed his reply brief, in which he asked the District Court to "order DOD to provide it with a copy of the Draft Response . . . and decide for itself whether Hopkins can share all or part of it with his undersigned counsel." ROA.1004.

81.    On 26 March 2024, without any warning, the District Court issued a Memorandum Opinion dated 25 March 2024 dismissing the case in full with prejudice on the stated grounds that "Hopkins has abandoned all his claims." ROA.1016. It reached this conclusion after first denying Hopkins's motion to stay, ROA.1012, before then concluding that, due to the denial of that motion, Hopkins had "wholly failed to respond." ROA.1013.

82.    The District Court also held that it lacked subject-matter jurisdiction over any of Hopkins's claims on either mootness or ripeness grounds, without ever receiving an opposition brief from Hopkins. ROA.1020-1021.

83.    Because it was dismissing the case in full, the District Court also denied Hopkins's motions to obtain or provide information so that he could prosecute his case as moot. ROA.1012.

84.    On 7 May 2024, Hopkins filed an unopposed motion for reconsideration, arguing that his undersigned counsel had made an excusable mistake by assuming that the partially unopposed stay motion would be granted, largely due to the fact that both parties clearly expected the briefing to continue at some future point. ROA.1024-1028.

85.    On 20 May 2024, the District Court denied Hopkins's unopposed motion, ROA.1034, and this appeal followed.

## SUMMARY OF ARGUMENT

The District Court erred when it denied Hopkins's stay motion, and it erred when it then held that he had abandoned his claims, that his claims were either moot or unripe, that his procedural motions were moot, and that he did not warrant reconsideration. The Court should reverse and remand this case to the District Court with specific instructions to adjudicate Hopkins's motions to unseal and for access before ordering briefing to recommence on DOD's dispositive motion.

## ARGUMENT

Hopkins seeks a reversal of the District Court's rulings identified above.

## I.     STANDARD OF REVIEW

The Court reviews questions of law *de novo*. *Dean v. Seidel*, 18 F.4th 842, 844 (5th Cir. 2021). The Court reviews scheduling orders and dismissal of a case with prejudice for failure to prosecute for abuse of discretion. *Berry v. CIGNARSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992).

## II.     DISMISSAL WITH PREJUDICE WAS UNWARRANTED

The case law on dismissal with prejudice for failure to prosecute is clear: "We will affirm dismissals with prejudice for failure to prosecute only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser

sanctions that proved to be futile." *Id.* "Additionally, in most cases where this Court has affirmed dismissals with prejudice, we found at least one of three aggravating factors: (1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id.* (cleaned up). None of these factors are present in this case.

First, this case stands in stark contrast to a case exhibiting "a clear record of delay or contumacious conduct by the plaintiff." This Court has likened such cases to situations with "significant periods of total inactivity." *Id.* (quoting *Morris v. Ocean Systems*, 730 F.2d 248, 252 (5th Cir. 1984)). However, the one consistent throughline in the above recitation of this case is the consistently high amount of activity in which Hopkins engaged in his attempts to resolve this controversy, even when DOD was completely non-responsive. As a representative sample:

- He spent nine months unsuccessfully attempting to engage in mediation. ROA.368-376.

- When that failed, he requested a status conference so that he could participate in mediation and share information with his undersigned counsel about the case. ROA.377.

- He then attempted to conduct depositions. ROA.387.

- He strenuously objected to DOD's request to delay dispositive briefing and forestall mediation and discovery. ROA.408-432.

- When that failed, he attempted to file his own motion for partial summary judgment. ROA.452-456.

- When that failed, he submitted the Draft Response for prepublication review so that his undersigned counsel could better oppose DOD's forthcoming dispositive motion. ROA.978.

- He again strenuously objected to DOD's request to delay dispositive briefing even further. ROA.481-484.

- After DOD finally filed its dispositive motion, he attempted to have parts of the Classified Appendix unsealed so that he could intelligently oppose DOD's dispositive motion. ROA.920-921.

- He then attempted to compel DOD to provide access to his unclassified Draft Response to his undersigned counsel so that he could intelligence oppose DOD's dispositive motion. ROA.955-957.

Simply put, these are not the actions of a party who has abandoned his claims. These are the actions of a party who is doing everything in his power to prosecute them.

Regarding the second factor, "there is no evidence that the district court determined that lesser sanctions would be [in]appropriate." *Berry*, 975 F.2d at 1192. The reason is simple: the District Court never issued *any* sanctions to Hopkins until it dismissed the case. The first ostensible sanction was the denial of

Hopkins's 3 January 2024 motion to stay, which could not constitute a "lesser

sanction[] that proved to be futile," *id.* at 1191, since it was issued

contemporaneously with the dismissal of the case. As such, Hopkins was given no

opportunity to be deterred by the ostensibly lesser sanction, and so it cannot be

claimed that it was futile.

The case against the aggravating factors is even more clear-cut. It is

uncontroverted that the delay was entirely due to the mistaken impression of

Hopkins's undersigned counsel and not Hopkins himself, and it is equally

uncontroverted that the delay was unintentional, since it was premised on a shared

belief between the parties' respective counsel that the stay motion would be

granted.

This last point perfectly illustrates the absence of the third aggravating

factor: actual prejudice to the defendant. After Hopkins filed his stay motion,

DOD's filings consistently conveyed a belief that the dispositive motion would be

fully briefed at a later date. Even while opposing the stay, DOD admitted that a

"reasonable extension" would be appropriate. ROA.935. DOD committed in two

separate briefs to providing the Draft Response to the District Court with its reply

brief. ROA.930, 989. DOD then told the District Court that it should "set a

deadline by which he must respond to the Department's motion for summary

judgment." ROA.983. All of these statements were necessarily predicated on the

assumption—shared by Hopkins and his undersigned counsel—that Hopkins's deadline for opposing the dispositive motion had not already passed. The District Court, for its part, did nothing to dispute this assumption. It never advised the parties that it considered the stay motion to still be undecided, and it in fact *granted* Hopkins's motion to stay the deadline for filing his last reply, ROA.7, which no reasonable person would understand to mean that the motion in question was about to be denied as moot because the stay motion was about to be denied.

This result is directly precluded by *Berry*. The District Court dismissed Hopkins's lawsuit solely because he failed to file an opposition brief that the parties had every reason to believe was not due yet, while he was at the same time aggressively litigating the case in other ways. "[T]his does not amount to a clear record of delay or contumacious conduct, and . . . there has been no showing of the futility of lesser sanctions." 975 F.2d at 1192.

Moreover, the ultimate sanction of dismissal with prejudice is grossly disproportionate to the alleged misconduct of not filing an opposition brief in ambiguous circumstances. "Our judicial system[] [has a] strong presumption in favor of adjudications on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Even though the District Court made a token attempt to adjudicate the merits of the case, it did so in a completely unbalanced manner, reaching critical conclusions about mootness and ripeness without any input from the non-movant.

The Court's finding that it lacked subject-matter jurisdiction was a foregone conclusion the moment it only considered DOD's arguments.

As a result, the District Court never heard arguments about why, even if seven counts might arguably be moot now, a simple amendment to the complaint would ensure that the Court had jurisdiction over DOPSR's redactions, as is normally the question in prepublication review cases. It never heard arguments about why, even if two counts might arguably be unripe now, another simple amendment to the complaint explaining Hopkins's *other* attempts to use the prepublication review system would ensure that they remained ripe. It never heard arguments about why those seven counts are not actually moot and why those two counts are not actually unripe. It never heard arguments about how DOD was not even allowed to file a motion to dismiss in the first place because it had already filed an Answer. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). And by dismissing the case with prejudice instead of dismissing it without prejudice or allowing Hopkins an opportunity to file an amended complaint, the District Court guaranteed that it would never have to adjudicate the case on the merits.

## III.   THE OTHER RULINGS WERE ALSO ABUSES OF DISCRETION

This appeal hinges virtually entirely on the District Court's decision to belatedly deny Hopkins's stay motion. For the same reasons that the District Court abused its discretion by involuntarily dismissing the case, it also abused its discretion by denying that stay motion, for reasons on which it never elaborated. ROA.1012. For the same reasons, it also abused its discretion by denying Hopkins's motion for reconsideration, in which Hopkins explained the source of the confusion. And if the Court finds that *any one* of these three determinations was in error, it must also find that the denial of Hopkins's two procedural motions was in error because they were clearly not moot. Simply put, this Court has before it multiple possible pathways which all lead to the same ultimate conclusion: that the case should be reversed and remanded with instructions to adjudicate all the pending motions after full, informed briefing.

### CONCLUSION

For the foregoing reasons, the Court should reverse and remand this case.

Date: August 10, 2024

Respectfully submitted,


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace

Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2024, I filed the foregoing

with the Court's Electronic Case Filing system, causing a copy to be served via

electronic mail to Appellee's counsel of record.

Date: August 10, 2024

Respectfully submitted,

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing filing contains 30 pages and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

 /s/ Kelly B. McClanahan 
Kelly B. McClanahan, Esq.