No. 24-10462

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

ROBERT HOPKINS, III,

Plaintiff-Appellant,

v.

DEPARTMENT OF DEFENSE,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Texas

### BRIEF FOR APPELLEE

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

LEIGHA SIMONTON
*United States Attorney*

SHARON SWINGLE
DANIEL WINIK
*Attorneys, Appellate Staff
Civil Division, Room 7245
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 305-8849*

## CERTIFICATE OF INTERESTED PERSONS

*Hopkins v. Department of Defense*

A certificate of interested persons is not required under Fifth Circuit Rule 28.2.1, as appellee is a governmental party.

*/s/ Daniel Winik*

Daniel Winik

**STATEMENT REGARDING ORAL ARGUMENT**

The federal government does not believe that oral argument is necessary but would be pleased to present oral argument if it would assist the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................i

STATEMENT REGARDING ORAL ARGUMENT ......................................ii

TABLE OF AUTHORITIES ..................................................................v

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE .................................................................3

    A.    Prepublication Review.............................................................3

    B.    This Case ...........................................................................8

SUMMARY OF ARGUMENT ............................................................... 14

STANDARD OF REVIEW.................................................................... 16

ARGUMENT .................................................................................... 16

I.    Plaintiff's Challenges To The Department's Prepublication Review Process Were Properly Dismissed For Lack Of Jurisdiction.............................. 16

    A.    The District Court Did Not Err In Ruling Without A Brief From Plaintiff ..............................................................................16

    B.    The District Court's Ruling Was Correct ....................................18

        1.    Plaintiff's procedural claims regarding his existing manuscripts are moot ........................................................19

        2.    Plaintiff failed to plead a basis for jurisdiction over his other procedural claims ....................................................20

        3.    Plaintiff's arguments are unpersuasive.............................22

II.    The District Court Erred In Dismissing Plaintiff's Claims With Prejudice.................................................................................. 24

CONCLUSION ............................................................................................................. 30

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.,*
  105 F.4th 749 (5th Cir. 2024) .................................................................16

*Association of Am. Physicians & Surgeons Educ. Found. v. American Bd. of Internal Med.,*
  103 F.4th 383 (5th Cir. 2024) ...................................................... 17, 29

*Beck v. NSA,*
  2023 WL 7117112 (D. Md. Oct. 16, 2023) ...........................................25

*Berry v. CIGNA/RSI-CIGNA,*
  975 F.2d 1188 (5th Cir. 1992) ..............................................................28

*Black v. North Panola School District,*
  461 F.3d 584 (5th Cir. 2006) ................................................................29

*Campbell v. Wilkinson,*
  988 F.3d 798 (5th Cir. 2021) ................................................................28

*Carver v. Atwood,*
  18 F.4th 494 (5th Cir. 2021) ................................................................17

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ................................................................................21

*Department of the Navy v. Egan,*
  484 U.S. 518 (1988) ................................................................................3

*Edgar v. Haines,*
  2 F.4th 298 (4th Cir. 2021) ....................................................................6

*Ermuraki v. Renaud,*
  987 F.3d 384 (5th Cir. 2021) ................................................................20

*Eversley v. MBank Dallas,*
  843 F.2d 172 (5th Cir. 1988) ................................................................25

*Hibernia National Bank v. Administracion Central Sociedad Anonima,*
  776 F.2d 1277 (5th Cir. 1985) ...................................................... 15, 28

*Jegart v. Roman Catholic Church of the Diocese of Houma-Thibodaux,*
  384 F. App'x 398 (5th Cir. 2010) .................................................. 17, 25

*John v. Louisiana (Board of Trustees for State Colleges & Universities),*
  757 F.2d 698 (5th Cir. 1985) ...................................................................28

*Johnson v. Pettiford,*
  442 F.3d 917 (5th Cir. 2006) ............................................................. 16-17

*Lawless v. Department of Defense,*
  2024 WL 4263851 (D.D.C. Sept. 23, 2024) ..........................................27

*Lopez v. City of Houston,*
  617 F.3d 336 (5th Cir. 2010) ...................................................................22

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992).................................................................................21

*Martin, In re,*
  15 F.3d 180 (5th Cir. 1994).....................................................................17

*O'Shea v. Littleton,*
  414 U.S. 488 (1974).................................................................................21

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,*
  702 F.3d 794 (5th Cir. 2012) .........................................................16, 28-29

*Shaffer v. Defense Intelligence Agency,*
  102 F. Supp. 3d 1 (D.D.C. 2015) ..............................................................7

*Snepp v. United States,*
  444 U.S. 507 (1980) ..................................................................................6

*Stillman v. CIA,*
  319 F.3d 546 (D.C. Cir. 2003) .....................................................11, 24, 25

*Vela v. City of Houston,*
  276 F.3d 659 (5th Cir. 2001) ...................................................................29

*Wilson v. CIA,*
  586 F.3d 171 (2d Cir. 2009).....................................................................25

*Woodham v. American Cystoscope Co.,*
  335 F.2d 551 (5th Cir. 1964) ...................................................................17

**Statutes:**

42 U.S.C. § 2014(y) .................................................................. 5

42 U.S.C. § 2277 .................................................................... 5

**Rules:**

Fed. R. App. P. 31(c) ............................................................ 17

Fed. R. Civ. P. 12(h)(3) ........................................................ 23

N.D. Tex. Loc. Civ. R. 7.1(e) .............................................. 18

**Executive Branch Materials:**

Exec. Order No. 13,526,
    75 Fed. Reg. 707 (Jan. 5, 2010) ...................................... 3
        § 1.1(a)(4) ................................................................ 3
        § 1.2(a)(1) ................................................................ 4
        § 1.2(a)(2) ................................................................ 4
        § 1.4 ......................................................................... 4
        § 1.7(a) ..................................................................... 4

Office of the Director of National Intelligence, Intelligence Community
    Directive 703 § D(2) (June 21, 2013), https://perma.cc/Q7PK-ZBVC ..................... 4

Standard Forms:
    SF-312, https://perma.cc/CBK3-PKPR ..................................... 5, 6
    SF-4414, https://perma.cc/6RDE-6PHZ .................................... 5, 6

## INTRODUCTION

Plaintiff is a former Captain in the U.S. Air Force who held a Top Secret security clearance during his service. As a condition of that clearance, plaintiff agreed to allow the Department of Defense to review certain manuscripts that he hoped to publish, including after he left military service, so that the Department could ensure the publications would not disclose classified information. After submitting several such manuscripts for prepublication review, plaintiff brought this suit to challenge the processes by which the Department was reviewing them. But while this suit was pending, the Department completed its review of the manuscripts and cleared them for publication with certain redactions.

Given that development, the government argued that the district court should dismiss plaintiff's challenges to the prepublication review process for lack of jurisdiction and that it should proceed to review, on the basis of classified declarations, whether the redactions required by the Department were appropriate. Rather than responding to that motion, plaintiff moved to stay briefing on the motion pending the disposition of two other motions that he planned to file. The district court did not grant that stay, and plaintiff never filed a response. In its ruling on the government's dispositive motion, the district court agreed with the government that it lacked jurisdiction over plaintiff's procedural claims. But rather than reviewing the merits of the required redactions, the court held that plaintiff had abandoned his claims by failing to file a response and that this abandonment warranted the dismissal of all of his claims with prejudice.

The district court's jurisdictional ruling was correct. The Department's completion of the review process for the manuscripts at issue rendered moot plaintiff's challenges to that process. To the extent plaintiff seeks forward-looking relief that could apply to the review of other manuscripts he might submit in the future, he has not established standing; nor would such claims be ripe for review. And the district court was justified in reaching those conclusions without receiving a brief from plaintiff, because plaintiff had failed to file a brief by the deadline the court had set (and extended).

The district court erred, however, in dismissing plaintiff's claims with prejudice as a result of his failure to file a response to the government's dispositive motion. The court's action was certainly understandable in light of plaintiff's failure to comply with the schedule set by the court and his insistence on attempting to relitigate issues on which the district court had already made clear that it disagreed with him. But under this Court's precedent, a litigant's failure to file a brief cannot, without more, justify ruling against the litigant on the merits.

This Court should accordingly remand to allow the district court to take either of two actions with respect to plaintiff's substantive challenge to the redactions in his manuscripts. First, the district court could consider whether it is appropriate to dismiss that challenge as a sanction, if it determines that the conditions required by this Court's precedent are satisfied. Second, if the district court declines to impose dismissal as a sanction, it should address the merits of the redactions on the basis of the brief previously filed by the Department and the classified record produced by the Department.

By failing to file a responsive brief on time, plaintiff forfeited the right to be heard on the government's dispositive motion.

## STATEMENT OF ISSUES

1.    Whether the district court was correct to hold that it lacked jurisdiction over plaintiff's challenges to the prepublication review process.

2.    Whether this Court should remand for the district court to act on plaintiff's substantive challenge to the redactions imposed by the Department, either by entering dismissal as a sanction or by ruling on the basis of the government's brief and the current record.

## STATEMENT OF THE CASE

### A.    Prepublication Review

1.    "Since World War I, the Executive Branch has engaged in efforts to protect national security information by means of a classification system graded according to sensitivity." *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988). The system has been governed by a series of executive orders, the most recent of which is Executive Order 13,526. 75 Fed. Reg. 707 (Jan. 5, 2010). Information may be classified if an official with classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." *Id.* § 1.1(a)(4).

Several designations may apply, depending on the harm that an unauthorized disclosure would cause. Information is deemed "Secret," for example, if its disclosure

"reasonably could be expected to cause serious damage to the national security." *Id.* § 1.2(a)(2). The "Top Secret" designation is reserved for information "the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security." *Id.* § 1.2(a)(1). Information classified at any level may also be placed in a special access program and further designated as Sensitive Compartmented Information, or SCI, if it "concern[s] or [is] derived from intelligence sources, methods or analytical processes" that require protection "within formal access control systems." Office of the Dir. of Nat'l Intelligence, Intelligence Community Directive 703 § D(2) (June 21, 2013), https://perma.cc/Q7PK-ZBVC.

Information may be classified only if it pertains to certain topics, such as "military plans, weapons systems, or operations," "intelligence activities," "foreign relations or foreign activities of the United States," or "scientific, technological, or economic matters relating to the national security." Exec. Order No. 13,526 § 1.4. Information may not be classified to "(1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of the national security." *Id.* § 1.7(a).

Certain types of intelligence information are also statutorily protected from disclosure whether or not the information is classified. For example, the Atomic Energy Act protects a category of "Restricted Data," defined to include "data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special

nuclear material; or (3) the use of special nuclear material in the production of energy." 42 U.S.C. § 2014(y); *see, e.g.*, *id.* § 2277 (criminal prohibition against disclosure of Restricted Data).

2.    Under Executive Order 13,526, federal employees who need access to classified information must sign one or more nondisclosure agreements as a condition of access.

Employees who need access to classified information of any kind are generally asked to sign a form currently known as Standard Form 312 (SF-312), which replaced a former version known as Standard Form 189 (SF-189). They agree not to "divulge classified information" without having "verified that the recipient has been properly authorized … to receive it" or having "been given prior written notice of authorization … that such disclosure is permitted." SF-312 ¶ 3, https://perma.cc/CBK3-PKPR; *see* ROA.560 ¶ 3 (SF-189) (similar).

Employees who need SCI access generally must sign Standard Form 4414 (SF-4414), https://perma.cc/6RDE-6PHZ. They agree never to divulge SCI "to anyone who is not authorized to receive it without prior written authorization." *Id.* ¶ 3. They also "agree to submit for security review," by the agency that granted them SCI access, "any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that [they] have reason to believe are derived from SCI." *Id.* ¶ 4.

Employees who sign either agreement acknowledge that unauthorized disclosures "could cause damage or irreparable injury to the United States." SF-312 ¶ 3; *see* SF-4414 ¶ 3 ("irreparable injury"); ROA.560 ¶ 3 (SF-189) (same). They recognize that their obligations apply both during employment "and at all times thereafter." SF-312 ¶ 8; SF-4414 ¶ 9; ROA.560 ¶ 8 (SF-189).

The prepublication review processes of "agencies involved in intelligence and national security"—established through nondisclosure agreements and agency policies—serve "to enable the agencies to redact, in advance of publication, classified or otherwise sensitive information" that an individual wishes to publish. *Edgar v. Haines*, 2 F.4th 298, 304 (4th Cir. 2021). Prepublication review "relies on the agency's judgment about what is sensitive and detrimental to the national security and therefore must be redacted, rather than on the employee's independent judgment[,] … because the agency has a 'broader understanding of what may expose classified information and confidential sources.'" *Id.* (quoting *Snepp v. United States*, 444 U.S. 507, 512 (1980) (per curiam)).

3.     Prepublication reviews for the Department of Defense (DoD or the Department) are coordinated by the Defense Office of Prepublication and Security Review (DOPSR) and follow Department policies known as Instructions 5230.09 and 5230.29. ROA.562; ROA.565; *see* ROA.575-585 (Instruction 5230.29); ROA.587-596 (Instruction 5230.09). DOPSR does not actually perform prepublication reviews. Rather, it determines which component or components of the Department (such as the

Army, the Navy, or the Air Force) should conduct the review, resolves any conflicts among the components, and handles communications with the author.  ROA.563.

Authors dissatisfied with the Department's prepublication review determinations may appeal within the Department.  ROA.584 § 4(b) (Instruction 5230.29, Encl. 3). And authors dissatisfied with the Department's ultimate determination can seek judicial review.  *See, e.g.*, *Shaffer v. Defense Intelligence Agency*, 102 F. Supp. 3d 1, 9-15 (D.D.C. 2015) (discussing review framework and reviewing redactions).

For "former DoD employees and contractors," prepublication review serves "to ensure that information they intend to release to the public does not compromise national security as required by their nondisclosure agreements."  ROA.590 § 1.2(g) (Instruction 5230.09).  "[I]nformation submitted by DoD personnel acting in a private capacity or submitted voluntarily by non-DoD sources"—as opposed to information submitted by current DoD personnel in their official capacities—is reviewed solely "to ensure that classified information is not disclosed."  ROA.579 § 2(e) (Instruction 5230.29, Encl. 2).

The Department advises authors to submit "papers and articles … at least 10 working days before" the anticipated publication and "[m]anuscripts and books … at least 30 working days" in advance.  ROA.583 § 3(a) (Instruction 5230.29, Encl. 3).  The Department's policy notes, however, that additional time "may be needed if DOPSR determines that the material is complex or requires review by" other agencies.  ROA.583 § 3(a) (Instruction 5230.29, Encl. 3).  And DOPSR's website notes that, "[d]ue to an

increased number of submissions, book-length manuscript reviews are currently taking several months" for review.  ROA.600.

Rather than submitting manuscripts through DOPSR, former Air Force employees may also submit manuscripts directly to the Air Force's Office of Public Affairs for review.  That process is guided by Chapter 9 of Air Force Instruction 35-101 (ROA.751-755) and Chapter 8 of Air Force Manual 35-101 (ROA.818-825).  ROA.565-566.  The Office of Public Affairs "occasionally must refer publications to DOPSR for further review."  ROA.565.  Like the Department's broader policies, the Air Force policies caution authors that "[t]he length, complexity, and content" of a given manuscript will "determine the number of reviewing agencies and, consequently, the time required for the complete review process."  ROA.818; *see* ROA.755.

## B.    This Case

1.    Plaintiff served in the Air Force between 1983 and 1991.  ROA.13 ¶ 25. He was cleared to receive Top Secret and SCI information.  ROA.13 ¶ 25.  Consistent with the obligations discussed above, plaintiff submitted various manuscripts for pre-publication review by the Department.  This case concerns seven of them:

- A book entitled *Klaxon!  Strategic Air Command Alert During the Cold War*, which plaintiff submitted in December 2020, ROA.15 ¶ 36;

- An article entitled *Searching for Mobile ICBMs*, submitted in January 2022, ROA.18 ¶ 54;

- A book entitled *Crowded Skies:  Cold War Reconnaissance Over the Baltic*, submitted in October 2021, ROA.19 ¶ 60;

- An article entitled *Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?*, submitted in January 2022, ROA.23 ¶ 75;

- An article entitled *Effectiveness of the Alert Force*, submitted in January 2022, ROA.24 ¶ 78;

- An article entitled *Why 15 Minutes Is Irrelevant*, submitted in January 2022, ROA.24 ¶ 81; and

- An article entitled *DoD Prepublication Review*, submitted in January 2022, ROA.25 ¶ 84.

When plaintiff brought this suit in March 2022, the Department had not completed its review of any of the manuscripts. Plaintiff brought this suit to challenge essentially two features of the review process the Department was employing.

First, plaintiff objected to the fact that when he submitted two of the manuscripts (*Klaxon!* and *Searching for Mobile ICBMs*) directly to the Air Force's Office of Public Affairs, the office referred those manuscripts to DOPSR for potential review by other components. Counts 1-3 of plaintiff's complaint challenge the propriety of these referrals, as well as an email from an official in the Office of Public Affairs asking that plaintiff's future manuscripts be sent "'directly to DOPSR,'" ROA.18 ¶ 57. *See* ROA.26-29 ¶¶ 88-111.

Second, plaintiff objected to the Department's administrative closure of all seven requests for review on the ground that it would communicate only with plaintiff directly, not with his counsel, about the manuscripts. In an email to plaintiff's counsel, who had submitted the manuscripts, the Department explained that its action reflected the fact that only plaintiff and not his counsel "held a security clearance," such that

plaintiff's provision to his counsel of the "non-public … information" contained in the manuscripts would itself be "a violation of [plaintiff's] non-disclosure agreement." ROA.22-23 ¶¶ 72-73 (complaint); ROA.863 (email).  In short, "DOPSR does not discuss classified information with individuals who are not cleared to receive it."  ROA.571. Counts 4-11 of the complaint challenge that practice (count 11) as well as the Department's administrative closure of the seven requests for prepublication review (counts 4-10).  ROA.30-44 ¶¶ 112-206.

Plaintiff sought, among other forms of relief, a declaration that the seven manuscripts "are unclassified in their entirety," an order requiring the Department to grant plaintiff's counsel access "to any alleged classified information" in the manuscripts, and a declaration that the Department violated the Administrative Procedure Act "and its internal regulations governing prepublication review."  ROA.44.

2.    After the filing of this suit, DOPSR obtained plaintiff's contact information and completed its review of plaintiff's seven manuscripts.  ROA.571.  The opening brief describes (at 15-17) the results of those reviews, including the Department's determination that several of the manuscripts contain classified information that would need to be redacted before they are published.

3.    While the reviews of his manuscripts were ongoing, plaintiff moved for a status conference at which he planned to seek an order compelling the government to process his counsel for a security clearance.  ROA.377.  He also moved to stay the case

pending the resolution of his motion for a status conference "and a forthcoming motion" to compel the issuance of a security clearance. ROA.387. The government responded by explaining that plaintiff's motion would be meritless under the approach set out in *Stillman v. CIA*, 319 F.3d 546, 548-549 (D.C. Cir. 2003), which holds that a court reviewing a dispute over whether material submitted for prepublication review contains classified information can consider the need for plaintiff's counsel to have a security clearance only if the court has determined that it cannot "'resolve the classification issue without the assistance of plaintiff's counsel'" and that "'its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security.'" ROA.397. Consistent with the government's reliance on the *Stillman* framework, the district court directed the government to "file its motion for summary judgment with an accompanying *ex parte, in camera* affidavit." ROA.451. The Court later denied plaintiff's motion for leave to file a partial summary-judgment motion, explaining—again, consistent with the *Stillman* framework—that it would consider the government's "motion for summary judgment before determining how to proceed with this case." ROA.5 (minute order, Dkt. 28).

4.      Shortly after completing the reviews of plaintiff's manuscripts, the Department filed a motion to dismiss and for summary judgment. Given the completion of the prepublication review processes for the seven manuscripts at issue, the Department asked the district court to dismiss for lack of jurisdiction plaintiff's challenges to

those processes, ROA.513-521, and to proceed to "determine whether the Department's redactions to [plaintiff's] manuscripts were proper under the laws and regulations governing classified material," ROA.539. The Department included two partly classified declarations (ROA.865-901 (redacted)) and one fully classified declaration (*see* ROA.902-903) that the district court could review to determine the propriety of the redactions under the *Stillman* framework.

The district court granted plaintiff's unopposed motion (ROA.905-906) to extend, by more than two months, the deadline for a response to the government's dispositive motion. Two days before the extended deadline, however, plaintiff moved to stay briefing on the government's motion pending the district court's resolution of two "forthcoming … motions: one to unseal part of" the government's classified appendix to its motion "and one to authorize access by" plaintiff's counsel to a document that plaintiff had transmitted to the Department, arguing that its redactions were unwarranted. ROA.915. Plaintiff filed the first motion two days later (ROA.920-928) and the second more than a month later (ROA.955-976). The government opposed both motions and a stay pending their resolution.[1] ROA.931-941; ROA.987-992. Plaintiff did not file a response to the government's dispositive motion.

---

[1] Because the government had initially stated that it did not oppose a stay pending resolution of the first motion, before revising that view when plaintiff filed the first motion, the government stated in its opposition brief that it did "not oppose a reasonable extension, *nunc pro tunc*, of [plaintiff's] deadline to respond to" the summary-judgment motion "in light of [the government's] changed position." ROA.934-935 & n.1.

5.     In a single ruling, issued more than two months after the expiration of the extended deadline for plaintiff's response brief, the district court denied plaintiff's stay motion, granted the government's dispositive motion, and denied plaintiff's two other motions as moot.  ROA.1006-1022.

The court determined that, by failing to respond to the government's dispositive motion, plaintiff "abandoned all his claims."  ROA.1016.  On that basis, the court dismissed all of plaintiff's claims "with prejudice."  ROA.1021 (emphasis omitted).

The court proceeded to conclude that it lacked "subject-matter jurisdiction to adjudicate all of [plaintiff's] claims."  ROA.1021.  The court explained that plaintiff's claims "are moot to the extent they challenge the manner in which the [Department] reviewed his manuscripts," because "the prepublication review of all of [those] manuscripts has been completed."  ROA.1019-1020.  The court determined that plaintiff lacked standing to challenge the Department's alleged requirement that he "submit all future manuscripts directly to DOPSR," and its alleged "'policy of administratively closing any requests for prepublication review submitted by an attorney,'" because plaintiff had not alleged a sufficiently "concrete and particularized" intention to submit future manuscripts for review.  ROA.1020-1021.  And even if plaintiff had standing to assert those claims, the court concluded, they would be unripe.  ROA.1021.

The court denied plaintiff's motion for reconsideration.  ROA.1034.

- 13 -

## SUMMARY OF ARGUMENT

I.      The district court correctly held that it lacked subject-matter jurisdiction over plaintiff's challenges to the process by which the Department reviewed his seven manuscripts. And the court did not err in reaching that conclusion without receiving a brief from plaintiff, because plaintiff forfeited the right to file a brief when he failed to file by the deadline, relying instead on the unwarranted expectation that the district court would grant his motion to stay briefing.

Most of plaintiff's claims sought equitable relief specific to prepublication review requests that were pending when plaintiff brought this suit. Those claims clearly became moot when the Department completed its review of the publications in question while this suit was pending.

Plaintiff's two remaining claims seek relief that is not limited to individual manuscripts. Those claims were not mooted by the completion of the prepublication reviews of plaintiff's manuscripts, but plaintiff failed to establish standing to maintain them, because he has not alleged a sufficiently specific intention to submit future manuscripts that would risk being subjected to the same conduct he challenges. And even if plaintiff had established standing, the claims would be unripe because they are contingent on uncertain future events.

II.     Just as it was proper for the district court to rule on the government's jurisdictional arguments without having received plaintiff's response, it would have been proper for the court to adjudicate the merits of the redactions to plaintiff's manuscripts

on the basis of the government's brief and the *ex parte* record that the government produced. For the same reason, it was proper for the district court to deny plaintiff's two motions for access to additional information as moot.

Instead of ruling on the merits, however, the district court dismissed plaintiff's substantive challenge to the redactions on the ground that plaintiff had "abandoned" his claims by failing to oppose the government's dispositive motion. That action was understandable in light of plaintiff's litigation conduct, but the district court erred in concluding that plaintiff had "abandoned" his claims. This Court has held that "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). A court can determine that a litigant has abandoned an issue where its conduct implies that it is no longer interested in pursuing that issue, but a plaintiff's failure to respond to a dispositive motion, without more, does not support that conclusion.

This Court should accordingly vacate the with-prejudice dismissal of plaintiff's complaint and remand for further proceedings. On remand, the district court should modify the judgment on plaintiff's procedural claims to be without prejudice in light of its jurisdictional ruling. As to plaintiff's substantive challenge to the redactions required by the Department, the district court could either enter a dismissal with prejudice as a sanction, if it makes the requisite findings, or adjudicate the government's motion for summary judgment on the basis of the government's brief and the *ex parte* record. The

denial of plaintiff's motion to stay briefing, and the denial as moot of his motions for access to additional information, should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of a dispositive motion based on a litigant's failure to abide by procedural rules or orders for abuse of discretion." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 805 (5th Cir. 2012). It "reviews a dismissal for lack of subject matter jurisdiction de novo." *Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.*, 105 F.4th 749, 752 (5th Cir. 2024).

## ARGUMENT

## I.     Plaintiff's Challenges To The Department's Prepublication Review Process Were Properly Dismissed For Lack Of Jurisdiction

This Court should affirm the district court's ruling that it lacked subject-matter jurisdiction over plaintiff's challenges to the process by which the Department reviewed his seven manuscripts.

### A.     The District Court Did Not Err In Ruling Without A Brief From Plaintiff

As an initial matter, plaintiff is incorrect to the extent he contends that the district court erred by issuing its jurisdictional ruling without waiting for plaintiff to file his long-overdue response to the government's motion to dismiss.

This Court has "recognized the power of district courts to 'adopt local rules requiring parties who oppose motions to file statements of opposition.'" *Johnson v. Pet-*

*tiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam).  And it has recognized the "purpose" of such rules: to establish that, "'should one of the parties be at fault in failing to file his brief … , the trial judge would be justified in deciding the motion on the papers before him.'"  *In re Martin*, 15 F.3d 180 (5th Cir. 1994) (unpublished per curiam) (quoting *Woodham v. American Cystoscope Co.*, 335 F.2d 551, 556 (5th Cir. 1964)).  The Federal Rules of Appellate Procedure establish a parallel consequence for an appellee's failure to file a brief in response to an appeal:  The appellee generally "will not be heard at oral argument," Fed. R. App. P. 31(c), and the court of appeals "will decide the case on the merits" based "on the record and briefs before it," *Woodham*, 335 F.2d at 557.

These principles apply even where courts dispose of cases with prejudice.  *See, e.g.*, *Jegart v. Roman Catholic Church of the Diocese of Houma-Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010) (unpublished per curiam).  For two reasons, they apply with even greater force to jurisdictional dismissals.  First, such dismissals are without prejudice, *Association of Am. Physicians & Surgeons Educ. Found. v. American Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024), leaving the plaintiff free to refile his claims if there is some meritorious basis for jurisdiction that he could have raised in response to a motion to dismiss.  And second, courts are not just permitted but obligated to dismiss cases sua sponte—without waiting for a motion, much less a response—when they determine that they lack subject-matter jurisdiction.  *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021).

- 17 -

Here, the district court's local rules require that responses "'to an opposed motion … be filed within 21 days from the date the motion is filed.'"  ROA.1015 (quoting N.D. Tex. Loc. Civ. R. 7.1(e)).  Plaintiff had already received a two-month extension of that deadline to respond to the government's dispositive motion—but rather than use that time to file any motions he believed were necessary as predicates to his response, he waited until two days before the extended deadline to seek a stay of briefing.  Plaintiff then waited more than a month before filing the second of the two motions he wanted the district court to rule on before he responded to the government's dispositive motion.  And even though those motions had no bearing on plaintiff's ability to respond to the government's jurisdictional arguments for dismissal—rather, they sought access to information that plaintiff thought he needed to respond to the government's request for summary judgment on the merits—plaintiff allowed more than two and a half months to pass, after the expiration of the deadline, without filing even a partial response addressing the jurisdictional issues.  Plaintiff moved to stay briefing, but litigants cannot grant themselves stays or extensions simply by filing motions asking for that relief.  When weeks had passed without a ruling on his stay motion, plaintiff should have known that he needed to file his response or risk having the district court rule on the basis of the government's motion.

## B.    The District Court's Ruling Was Correct

The district court was also correct to hold that it lacked jurisdiction over plaintiff's challenges to the prepublication review procedures employed by the Department.

### 1. Plaintiff's procedural claims regarding his existing manuscripts are moot

As discussed above, the complaint challenges essentially two features of the process by which the Department was responding to plaintiff's requests for the prepublication review of seven manuscripts—requests that remained outstanding at the time the complaint was filed.

First, plaintiff objected to the fact that when he submitted two of the manuscripts (*Klaxon!* and *Searching for Mobile ICBMs*) directly to the Air Force's Office of Public Affairs, the office referred those manuscripts to DOPSR for potential review by other components. Claims 1 and 2 of the complaint—one for each of the two manuscripts—alleged that the referrals deprived plaintiff "of a rapid decision" on the manuscripts and that they "led to DOPSR's closure of" the requests because DOPSR would not communicate with his counsel. ROA.26-28 ¶¶ 93-94, 100-101. They sought a declaratory judgment that the referrals "violated Air Force and [Department of Defense] regulations and the First Amendment" and "an injunction compelling" the Air Force to "immediately issue" its prepublication review determination on each of the two manuscripts. ROA.27-28 ¶¶ 95, 103.

Second, plaintiff objected to DOPSR's administrative closure of all seven of his requests for prepublication review on the ground that it would communicate only with plaintiff directly, not with his counsel, about the manuscripts. Counts 4-10 of the complaint—one for each of the manuscripts—alleged that DOPSR's practice "violated

[plaintiff's] First Amendment rights" and sought a declaration to that effect, as well as various forms of injunctive relief requiring DOPSR to complete the reviews expeditiously.  ROA.30-42 ¶¶ 119-120, 123, 132-133, 135, 144-145, 147, 156-157, 159, 168-169, 171, 180-181, 183, 192-193, 195.

The district court correctly concluded that these claims were rendered moot by the completion of the prepublication reviews.  ROA.1020.  As noted above, the only injunctive relief plaintiff sought on these claims was an order directing the Department to complete the reviews, and that relief became unnecessary once the Department completed the reviews.  Claims become moot "when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff," as a result of which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (per curiam) (quotation marks omitted).  That is clearly true of counts 1-2 and 4-10 here.

### 2.    Plaintiff failed to plead a basis for jurisdiction over his other procedural claims

Plaintiff's two remaining claims seek relief that is not limited to individual manuscripts.  Count 3, challenging the supposed "categorical order" for plaintiff "to submit manuscripts directly to DOPSR," seeks among other forms of relief "an injunction compelling" the Air Force's Office of Public Affairs "to process" plaintiff's "future submissions" and refer them to DOPSR only under certain conditions.  ROA.29

¶¶ 105-106, 111.  And count 11, challenging the Department's alleged "policy of administratively closing any requests for prepublication review submitted by an attorney," seeks declaratory and injunctive relief against closing requests "solely" on that ground.  ROA.42-44 ¶¶ 197, 206.

These counts are not mooted by the completion of the prepublication reviews of plaintiff's seven manuscripts, because they seek relief not limited to those manuscripts.  But as the district court correctly concluded, plaintiff failed to establish two other predicates for resolving these claims: standing and ripeness.

First, as to standing, a plaintiff's "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"; rather, a plaintiff must show a "real and immediate threat of *repeated* injury" to establish jurisdiction over a claim for such relief.  *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974) (emphasis added); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 101-108 (1983).  And plaintiff did not plausibly allege that sort of forward-looking threat.  The complaint refers to potential "future submissions" (ROA.29 ¶ 111) and states that plaintiff is "a well-respected author of military history books and articles with a continuing duty to submit materials for prepublication review" (ROA.43 ¶ 205).  But "[s]uch 'some day' intentions" to submit future publications for review—"without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" required for Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Second, even if plaintiff had adequately alleged standing to bring these claims, they would be unripe for resolution. "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). And claims are unripe for review when they are "'abstract or hypothetical'"—that is, where the plaintiff's "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 341-342. That is true of counts 3 and 11 here. Whether it is appropriate for the Air Force's Office of Public Affairs to refer a submitted manuscript to DOPSR, and whether it is appropriate for the Department to communicate only with the author himself (and not his counsel) about a manuscript, depends on all sorts of facts specific to the situation. Plaintiff's challenges to the practices alleged in counts 3 and 11 should therefore be resolved, if at all, in the context of a concrete dispute where the Department's actions are harming plaintiff. They should not be resolved in the hypothetical context in which they currently arise.

### 3.    Plaintiff's arguments are unpersuasive

Plaintiff's brief does not substantively challenge the district court's jurisdictional ruling. It argues solely that the district court erred by ruling on the government's dispositive motion without waiting for the brief he had chosen not to file by the deadline. But to the extent that plaintiff gestures toward arguments he might have made had he filed a brief (Br. 29)—arguments he has waived by failing to raise them in district court—those arguments are meritless.

First, plaintiff suggests (Br. 29) that even if certain of his claims "might arguably be moot now, a simple amendment to the complaint would ensure that the [district court] had jurisdiction over DOPSR's redactions." But the government does not dispute that the district court had jurisdiction to review the redactions; as noted above (at 11-12) and below (at 24), the government urged the district court to do exactly that.

Second, plaintiff contends (Br. 29) that "even if two counts"—presumably the ones seeking forward-looking relief as to the Department's processes—"might arguably be unripe now, another simple amendment to the complaint explaining [plaintiff's] *other* attempts to use the prepublication review system would ensure that they remained ripe." But plaintiff never sought leave to amend the complaint, because he did not file a response to the government's motion, and he cannot now evade that failure by suggesting that the district court was required to wait indefinitely for his response. If he has a basis to plead jurisdictionally proper challenges to the Department's procedures, he can bring them in a new lawsuit.

Third, plaintiff suggests (Br. 29) that he might have presented arguments about why his claims "are not actually moot" or unripe. But he does not indicate what those arguments might be.

Finally, plaintiff argues (Br. 29) that it was improper for the government "to file a motion to dismiss … because it had already filed an Answer." But plaintiff overlooks Federal Rule of Civil Procedure 12(h)(3), which recognizes that a court "must dismiss" an action if it "determines at any time that it lacks subject-matter jurisdiction." Courts

routinely entertain jurisdictional arguments based on factual developments over the course of the litigation.

This Court should therefore affirm the dismissal for lack of jurisdiction of plaintiff's challenges to the Department's prepublication review process.

## II.   The District Court Erred In Dismissing Plaintiff's Claims With Prejudice

1.     As noted above, the government argued before the district court that, after dismissing for lack of jurisdiction plaintiff's challenges to the Department's prepublication review processes, the court should proceed to "determine whether the Department's redactions to [plaintiff's] manuscripts were proper under the laws and regulations governing classified material." ROA.539.  And the Department included with its dispositive motion two partly classified declarations (ROA.865-901 (redacted)) and one fully classified declaration (*see* ROA.902-903) that the district court could review to determine the propriety of the redactions.

That approach was consistent with the pathmarking decision in this area: *Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003).  In that case, the D.C. Circuit explained that courts should typically resolve classification disputes on an *ex parte* basis "without the assistance of plaintiff's counsel" and "with the appropriate degree of deference owed to the Executive Branch concerning classification decisions." *Id.* at 548-549.  If a court cannot determine whether information is properly classified solely on the basis of the government's filings, the D.C. Circuit explained, it should "consider whether its need for" the

- 24 -

"assistance of plaintiff's counsel … outweighs the concomitant intrusion upon the Government's interest in national security." *Id.* at 549. "Only then should it decide whether to enter an order granting [plaintiff's counsel] access to" classified information. *Id.* Even outside the D.C. Circuit, courts consistently follow that approach in resolving challenges to classification decisions on the basis of *ex parte* evidence submitted by the government. *See, e.g.*, *Wilson v. CIA*, 586 F.3d 171, 195 (2d Cir. 2009); *Beck v. NSA*, 2023 WL 7117112, at *4 (D. Md. Oct. 16, 2023).

For the reasons discussed above (at 16-18), it would have been proper in this case—even aside from *Stillman*—for the district court to resolve the merits without receiving a brief from plaintiff. "When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if they show that the movant is entitled to judgment in his favor." *Jegart*, 384 F. App'x at 400 (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)).

It was therefore also proper for the district court to deny plaintiff's two motions for access to additional information as moot. Plaintiff claimed to need that additional information in order to participate in briefing of the government's summary-judgment motion. But plaintiff forfeited the right to be heard on that motion by failing to file a response within the deadline ordered by the court. If he thought he needed the information requested by his two motions, he should have filed them earlier, or should have filed at least a partial response to the government's motion—by the deadline—while

preserving a request to submit a supplemental response if his motions were later granted.

2.    Instead of resolving the merits on the basis of the government's brief and the classified record it had submitted, the district court instead dismissed all of plaintiff's claims with prejudice—both his procedural claims, over which the district court held that it lacked jurisdiction, and his substantive challenge to the redactions—on the ground that plaintiff had "abandoned all his claims" by failing to oppose the government's dispositive motion.  ROA.1016.

That action was understandable.  As the district court noted, plaintiff had already been granted "a lengthy extension" of time to respond to the government's motion.  ROA.1016.  That gave him more than enough time to file any motion he regarded as a predicate to his ability to brief the motion effectively.  Yet he waited until just two days before the extended deadline to move for a stay of the briefing schedule.  And even then, he waited more than a month to file the second of the two procedural motions he thought needed to be resolved before he could file a brief on the merits.  Those motions—which argued that plaintiff's counsel needed access to certain classified information in order to participate in briefing on the merits—effectively asked the district court yet again not to follow the *Stillman* framework, under which (as noted above) courts typically resolve classification disputes on an *ex parte* basis.  The motions thus flew in the face of the district court's prior indications that it intended to adhere to the *Stillman* framework.  As discussed above, plaintiff had previously moved for a status

conference at which he planned to seek an order compelling the government to process his counsel for a security clearance, ROA.377, and moved to stay the litigation pending the resolution of his motion for a status conference "and a forthcoming motion to compel" the issuance of a security clearance, ROA.387, but after the government invoked *Stillman* in its response, ROA.397, the district court directed the government to "file its motion for summary judgment with an accompanying *ex parte*, *in camera* affidavit," ROA.451. Plaintiff had no basis to believe his further attempt to evade *Stillman* would produce a different outcome.[2]

Plaintiff's approach was also inconsistent with the district court's effort to make clear that it wanted to resolve classification issues in this case in one fell swoop. As noted above, plaintiff had previously sought leave to file a partial summary-judgment motion challenging a small subset of redactions to one manuscript on the ground that the redacted information was "not properly classified," ROA.452-453; in denying that motion, the district court reiterated its prior "conclus[ion] that [it would] consider Defendant's motion for summary judgment before determining how to proceed with the case," ROA.5 (minute order, Dkt. 28). Yet plaintiff continued to seek rulings on the classification of limited portions of the record. In one of the two motions that he wanted the district court to resolve before he filed his summary-judgment response, he

---

[2] Indeed, another district court recently denied motions similar to those that plaintiff filed here, explaining that they were inconsistent with *Stillman*. *See Lawless v. Department of Defense*, 2024 WL 4263851, at *2 (D.D.C. Sept. 23, 2024).

asked the district court to determine that certain information regarding the government's classified declarations should be publicly filed, *see* ROA.920-921; in the other, he asked the district court to determine that a document he had prepared was not properly classified, *see* ROA.964-968.

Given all that, the district court was well within its discretion to deny plaintiff's motion for a stay of briefing, and it could have considered dismissing plaintiff's challenge to the redactions as a litigation sanction. District courts can impose dismissal as a sanction "'when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile.'" *Campbell v. Wilkinson*, 988 F.3d 798, 802 (5th Cir. 2021) (quoting *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)).

But instead of considering whether plaintiff's conduct warranted dismissal as a sanction, the district court based its dismissal with prejudice on the premise that plaintiff had "abandoned" his claims by failing to oppose the government's dispositive motion. After careful consideration of the relevant caselaw, the government has concluded that the district court's approach was erroneous under this Court's precedent, which holds that "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing *John v. Louisiana (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)); *see*

*also, e.g., Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 805 (5th Cir. 2012).

The "abandonment" cases on which the district court relied are consistent with that holding. A court can determine that a litigant has abandoned an issue where its conduct implies that it is no longer interested in pursuing that issue. In *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001), for example, this Court held that the defendant had waived a particular defense by failing to raise it at summary judgment after "weakly assert[ing]" it in the answer. *Id.* at 679. And in *Black v. North Panola School District*, 461 F.3d 584 (5th Cir. 2006), the Court chose not to address a claim that the plaintiff had raised in the complaint but failed to defend in response to a motion to dismiss, *id.* at 588 n.1. But a plaintiff's failure to respond to a dispositive motion, without more, does not necessarily indicate that the plaintiff is no longer interested in pursuing his claims. Here, plaintiff framed his requests for his counsel to access additional information as predicates to responding to the government's summary-judgment motion—not as alternatives to litigating that motion.

3.     This Court should accordingly vacate the with-prejudice dismissal of plaintiff's complaint. It should direct the district court to modify the dismissal of plaintiff's procedural claims to be without prejudice, since those claims were properly dismissed for lack of jurisdiction. *See Association of Am. Physicians & Surgeons Educ. Found. v. American Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024). And it should remand

for the district court to take one of two steps with respect to plaintiff's challenge to the substance of the redactions to his manuscripts.

First, as discussed above, the district court could consider whether it would be appropriate to dismiss plaintiff's challenge to the redactions as a sanction for his conduct of the litigation.

Second, as also discussed above, the district court could adjudicate the government's motion for summary judgment on the propriety of the redactions. If the district court takes that approach, it should rule on the basis of the government's brief and the *ex parte* record, consistent with *Stillman* and plaintiff's failure to file any opposition brief. The district court should not revisit plaintiff's motions for access to additional information, which were mooted by his forfeiture of the right to participate in briefing, or his motion for a stay of briefing, which the district court was well within its discretion to deny.

## CONCLUSION

This Court should affirm the district court's dismissal for lack of jurisdiction of plaintiff's challenges to the prepublication review process, while directing the district court to modify the dismissal to be without prejudice. The Court should also affirm the district court's denial of plaintiff's motion to stay briefing and its denial as moot of his motions for access to additional information. As to plaintiff's substantive challenge to the redactions in his manuscripts, the Court should vacate the district court's dismis-

sal with prejudice and remand with instructions for the district court to consider dismissal as a sanction or to adjudicate the propriety of the redactions on the basis of the government's brief and *ex parte* submissions.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

LEIGHA SIMONTON
  *United States Attorney*

SHARON SWINGLE

 */s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff
  Civil Division, Room 7245
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8849
  daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,528 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Garamond, a proportionally spaced typeface.

/s/ Daniel Winik
Daniel Winik